Content Report For 3.1.1a. Maximum percent of family's gross income charged as a co-payment
Fiscal Year: FY 2025-2027
Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | What is the maximum percent of a family's gross income any family could be charged as a co-payment? | Cap percentage | | Notes |
|---|---|---|---|---|---|---|
| Alabama | Region IV | Amendment #2 | The lead agency currently sets the max of 7% based on the family's gross income. The copayment amount is per child which may result in the total amount of the copayment for the family to exceed 7%. The lead agency has submitted a waiver for the requirement to be met after the start of the state plan cycle. | 7% per child and not family | Check if Amendment brought into compliance | Wasn't ever compliant b/c based on child and not family |
| Alaska | Region X | Initial Submission | The maximum a family currently pays is 9% of their gross monthly income. The Child Care Program Office will be submitting a waiver to allow the time needed to change policies, procedures, any applicable regulations, and update data systems to come into compliance with the 7% threshold. | 9% | | |
| American Samoa | Region IX | Initial Submission | The Lead Agency received a non-compliance notice on December 13, 2021, due to the absence of a co-payment system in American Samoa. The agency will collaborate with the Regional Technical Assistance Team to develop a co-payment plan and will require extra time to ensure this requirement is met. | No sliding fee scale | | |
| Arizona | Region IX | Amendment #2 | 1.7 percent | 1.7% | Check if Amendment brought into compliance | compliant in initial submission |
| Arkansas | Region VI | Amendment #1 | 4%. | 4% | Check if Amendment brought into compliance | compliant in initial submission |
| California | Region IX | Amendment #1 | 1% | 1% | Check if Amendment brought into compliance | compliant in initial submission |
| Colorado | Region VIII | Initial Submission | Copays (parent fees) are currently capped at 10% of a family's income. Colorado will be adjusting our parent fee formula to ensure that the fee does not exceed 7% of the family's income by April 1, 2026, which will allow time for the appropriate technology changes to be completed to meet full implementation by August 1, 2026. | 10% | | |
| Connecticut | Region I | Amendment #2 | 7% dependent on household size and income. | 7% | Check if Amendment brought into compliance | Yes came into compliance with Amendment #1 |
| Delaware | Region III | Initial Submission | 7 | 7% | | RO-identified mismatch between what DE reported in plan versus state's published sliding fee scale which caps at 9% (should we update percentage to 9%?) |
| District of Columbia | Region III | Initial Submission | 7 percent | 7% | | |
| Florida | Region IV | Initial Submission | Currently, DEL requires co-pays to be no more than 10% of a family's income. The DEL is working to establish co-payment policies for families receiving CCDF assistance to be no more than 7% of family income to help ensure family co-payments are not a barrier to accessing child care. | 10% | | |
| Georgia | Region IV | Amendment #2 | Family fees are based on a percentage of a family's annual gross applicable income and family size. The assessed fee is a family fee for all children in care, not a fee for each child. The maximum copay is always 7% and never goes above. Family fees are not assessed for child care services when one of the following applies: Children who are in Georgia's Division of Family and Children Services (DFCS) custody, a parent who is 17 years of age or younger at eligibility determination, and the family's gross applicable income is at or below 10% of the poverty guidelines. | 7% | Check if Amendment brought into compliance | compliant in initial submission |
| Guam | Region IX | Initial Submission | 1.7% | 1.70% | | |
| Hawaii | Region IX | Initial Submission | The Department of Human Services (DHS) is not compliant by 10/01/24 for section 98.20(a)(2)(i): 85 percent of the State's median income (SMI) based on most recent SMI data. Preliminary Notice of Possible Non-Compliance Rev. date: 01/2023.<br>DHS will need additional time to fully implement the requirement. The maximum percent of a family's gross income is 9%. The Department of Human Services is in the process of amending the Hawaii Administrative Rules (HAR) Chapter 17-798.3 Child care Payments, for copayments at 7% of a family's gross income. The amendment package for Subsidy Rules is currently with the Attorney General for review. The eligibility chart in HAR, Chapter 17-798.3-9(b)(1) lists dollar amounts. The amendments will include language to refer to the most recent data rather than having actual dollar amounts. | 9% | | |
| Idaho | Region X | Initial Submission | At this time, co-payments in Idaho are a flat rate assessed per child based on household size, household income, and qualifying activity hours. While Idaho looks forward to updating our copayment calculations there is not currently a maximum percentage of a family's gross income. | No percentage cap, Idaho uses flat rate for co-payments based on household size, income, and qualifying activity hours | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Illinois | Region V | Amendment #1 | 7% | 7% | Check if Amendment brought into compliance | RO-identified that they have nominal co-pay amount that could be more than 7% for some families |
| Indiana | Region VI | Amendment #2 | 26%. A waiver request will be submitted to allow time for eligibility systems to be changed to cap co-pays at 7%. | 26% | | |
| Iowa | Region VII | Initial Submission | 6.5% | 6.5% | | |
| Kansas | Region VII | Amendment #2 | The maximum amount of a family share deduction assigned to a case is 3% of the family's countable gross income. | 3% | Check if Amendment brought into compliance | compliant in initial submission |
| Kentucky | Region IV | Amendment #1 | Copayments have been waived for all families since 2021. The Lead Agency originally used CRRSA funds to waive copayments and when those funds expired we transitioned to using state funding. State funding will expire on September 30, 2024. Families will be expected to pay their copayments beginning on October 1, 2024. DCC anticipates the copayment will be capped at 7% of a family's monthly income due to upcoming changes that are in place. The Lead Agency will request a waiver if there are delays in implementing that change to the copayment chart. | Waive co-pays for all families since 2021 using CRRSA and then state funding (which expired on 9/30/24). Expect to cap at 7% but have not amended plan to confirm. | check that non-compliant | compliant in initial submission |
| Louisiana | Region VI | Amendment #1 | 5.25% | 5.25% | Check if Amendment brought into compliance | compliant in initial submission |
| Maine | Region I | Amendment #3 | The total amount of the Parent Fee assessed cannot exceed seven percent (7%) of the Family's Eligibility Income for families below 85% of State Median Income and cannot exceed ten percent (10%) of the Family's Eligibility Income for Families with Eligibility Income between 85% and 125% of State Median Income. | 10% | | |
| Maryland | Region III | Amendment #1 | Maryland's assigned parental copayment is less than 1% of the families gross family income. | 1% | Check if Amendment brought into compliance | compliant in initial submission |
| Massachusetts | Region I | Initial Submission | The most that any family can be charged for a copayment as a percentage of their income is 11.9%. This figure is based on a family of two that has recertified with a maximum income of $7,008 per month. EEC is requesting a waiver and will work to reduce the maximum percentage of a copayment to 7% or less of a family's gross income. | 11.9% | | |
| Michigan | Region V | Amendment #1 | 5.23%. | 5.23% | Check if Amendment brought into compliance | Was compliant at initial but further reduced cap with Amendment #1 |
| Minnesota | Region V | Amendment #2 | The maximum percent of a family's gross income paid by families is 14 percent at the exit income range at redetermination, which is 67 percent SMI. The percent paid reduces to 11 percent, during the 12-month eligibility period, for families with income above 67 percent SMI and below 85 percent SMI. Minnesota will be submitting a waiver for charging more than 7% of a family's gross income, regardless of the number of children participating in CCDF. | 14% | | |
| Mississippi | Region IV | Amendment #1 | Up to 50% of SMI, copayment is capped at 5.5% of gross income; Up to 85% of SMI, copayment is capped at 6.5% of gross income. | 6.5% | Check if Amendment brought into compliance | compliant in initial submission |
| Missouri | Region VII | Amendment #1 | The current maximum co-payment is 6.3% per child. The Lead Agency will submit a waiver request for additional time to implement this provision. | 6.3% | Check if Amendment brought into compliance | Cap is per child and not per family |
| Montana | Region VIII | Amendment #1 | The maximum percentage is set at seven percent. | 7% | Check if Amendment brought into compliance | came into compliance with amendment #1 |
| Nebraska | Region VII | Initial Submission | 7% | 7% | | |
| Nevada | Region IX | Initial Submission | 7% | 7% | | |
| New Hampshire | Region I | Initial Submission | The maximum percent of a family's gross income is 7% | 7% | | |
| New Jersey | Region II | Initial Submission | 5% | 5% | | |
| New Mexico | Region VI | Initial Submission | The maximum percent of a family's gross income any family can be charged is five percent. | 5% | | |
| New York | Region II | Initial Submission | For those families that are required to pay a family share, the family fee for child care assistance will be calculated as one percent of the family's income that exceeds the state income standard, which is 100% of the federal poverty level. There is a nominal, minimum family fee of $1 per week for all families that are required to pay a family share. A family with an income of $1 per month that does not meet any exemption criteria would have a monthly family share of $4.33, or 433% of income. OCFS will be requesting a waiver related to this provision while it implements changes to expand the family share exemption criteria. | 1% of the family's income that exceeds the state income standard (which is 100% of FPL) and a nominal fee of $1 for all families required a co-pay. | non-compliant b/c of nominal fee to all families potentially being more than 7% of family's income | |
| North Carolina | Region IV | Amendment #1 | 10%<br>DCDEE recognizes that 10% is not compliant with CCDF requirements. DCDEE needs additional time to request legislative authority and to make functionality adjustments within NC FAST to fully implement this change. | 10% | | |
| North Dakota | Region VIII | Amendment #1 | 6% | 6% | Check if Amendment brought into compliance | compliant in initial submission |
| Northern Mariana Islands | Region IX | Initial Submission | Not more than 1% | 1% | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Ohio | Region VI | Amendment #1 | The family copayment is calculated on a sliding fee scale. Families below 100 percent of the federal poverty level (FPL) have no copayment. Families between 101 percent to 200 percent increase from 7 percent of their income to 8.75 percent of their income. After 200 percent of the FPL, the copayment increases more dramatically, capping out at 27 percent of income for 295 percent and 300 percent of the FPL.<br><br>The Department of Children and Youth (DCY) will be analyzing the fiscal impact for all of the federal child care payment rules that became effective in April 2024. DCY will plan to request a 2-year waiver while legislative and rule changes are identified and funding estimates are completed. The State's biennial budget process will begin in the fall of 2024, with the Governor preparing his proposed operating budget for the legislature by early 2025. The final statute and funding will not be known until July 1, 2025. Ohio will then begin implementing the policies that were modified and funded through the state budget process.<br><br>DCY will submit a waiver by October 1, 2024 for the co-payment rule. | 27% | | |
| Oklahoma | Region VI | Amendment #1 | 7 | 7% | Check if Amendment brought into compliance | compliant in initial submission |
| Oregon | Region X | Amendment #1 | Oregon passed legislation in 2021 through House Bill 3073 which limited copays to no more than 7% of a family's income. | 7% | Check if Amendment brought into compliance | compliant in initial submission |
| Pennsylvania | Region III | Amendment #1 | Effective May 5, 2025, a family's co-payment will not exceed 7% of the family income. Pennsylvania will no longer have a $5 minimum co-payment. | 7% | Check if Amendment brought into compliance | came into compliance with amendment #1 |
| Puerto Rico | Region II | Amendment #1 | The maximum copayment percentage for a family is 2.0% of gross income. | 2% | | |
| Rhode Island | Region I | Initial Submission | 7% | 7% | | |
| South Carolina | Region IV | Amendment #1 | 2% | 2% | Check if Amendment brought into compliance | compliant in initial submission |
| South Dakota | Region VIII | Amendment #2 | Under initial tier eligibility copayments do not exceed 1% of Household income. Families' copayments are capped at less than 2%of household income while eligible for the 12-month graduated phase out. | 2% | Check if Amendment brought into compliance | compliant in initial submission |
| Tennessee | Region IV | Initial Submission | Five (5) percent. | 5% | | |
| Texas | Region VI | Initial Submission | TWC will implement a new policy on September 1, 2024, that caps co-payments at 7 percent of a family's gross income for children in care. TWC is not able to implement this change with the current case management system. TWC will implement the new copayment methodology with the launch of TX3C in December 2024. This policy change will both be rolled out incrementally as families are recertified, and TWC will therefore request a temporary waiver of this federal requirement. | Will implement a policy on 9/1/24 that caps co-payments at 7%. Policy change will be rolled out incrementally as families are recertified. | Check if non-compliant | confirmed non-compliant |
| Utah | Region VIII | Initial Submission | 7 percent | 7% | | |
| Vermont | Region I | Amendment #3 | The maximum percent is 14% up to Vermont's 575% FPL. | 14% | | |
| Virgin Islands | Region II | Initial Submission | Although subsidized Providers rarely charge families their co-payment. The co-pay is based on a weekly income rate and family size, and there is no co-payment required for educational training for very low income families. The maximum percentage of family gross income is 2%. | 2% | | |
| Virginia | Region III | Amendment #1 | 5% | 5% | Check if Amendment brought into compliance | Was compliant at initial but further reduced cap with Amendment #1 |
| Washington | Region X | Initial Submission | 7 | 7% | | |
| West Virginia | Region III | Initial Submission | 7% | 7% | | |
| Wisconsin | Region V | Initial Submission | Previous Wisconsin State Statues required the Lead Agency to charge a family a up to 31% of their family income. Beginning 7/1/2024, the Lead Agency will charge many families no more than 7% of their income, however, families nearing 85% SMI may see a copay maximum amount of 12% of their family income under the new Wisconsin Statute signed into law in 2023. Additionally, as of 6/30/24 the Lead Agency has submitted an implementation waiver to allow the legislative efforts that will be necessary to comply with the 2024 OCC Rule requiring copays do not exceed 7% gross income for all families receiving Wisconsin Shares subsidy payments. | 12% | | |
| Wyoming | Region VIII | Initial Submission | A family will not be charged more than 7% as a copayment. | 7% | | |

Content Report For 4.5.1. Child care services available through grants or contracts
Fiscal Year: FY 2025-2027

Number of reported States/Territories: 56

*12 Lead Agencies are compliant on one or more of the required populations

*7 Lead Agencies are fully compliant

| | infants and toddlers | underserved geographic | children with disabilities |
|---|---|---|---|
| | 12 | 10 | 8 |
| | 11 states 1 territory | 10 states | 7 states 1 territory |

| State/Territory | Region | Plan Version | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Describe: | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Describe: | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | Children with disabilities. Number of slots allocated through grants or contracts: | Describe: |
|---|---|---|---|---|---|---|---|---|---|
| Alabama | Region IV | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Alaska | Region X | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| American Samoa | Region IX | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Arizona | Region IX | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Arkansas | Region VI | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Families enrolled in contracted slots will also have the option to select a different provider as needed. | | | | X | OEC will seek to serve approximately 5 children. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| California | Region IX | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Resource and Referral (R&R) agencies located in every county throughout the State are required to have written referral policies available to all persons requesting them regardless of income level or other eligibility requirements. The R&R agencies are required by regulation to assist parents in choosing a provider by providing parents with information regarding how to select child care services which will meet their needs and a range of possible child care alternatives from which to choose. Additionally, on the consumer education website mychildcareplan.org, in the resource section, there are several resources related to helping parents choose a child care that fits their needs. See: https://mychildcareplan.org/resource-category/?topic=choosing- child-care. Contractors will also engage in conversations with families regarding alternative child care options in their community in the event that their program may not meet all of the child care needs of the family. This will happen sometimes prior to having been counseled on their child care choices through an R&R agency. In the event that a family's needs were not being met providers/contractor will also refer the family back to a local R&R for more options or in counties where there are centralized eligibility | | | | X | The Lead Agency administers multiple child care and development programs for direct service of children receiving CCDF. These programs serve children under the age of 13 and older children with exceptional needs through contracts for child care slots in centers or in family child care home networks operated or administered by either public or private agencies. These programs are the general child care and development program (CCTR) and the family child care home education network program (CFCC). California funds 54,327 slots in these direct-contract programs. All of these slots are available to children with disabilities, but California does not allocate a particular number of slots in these programs to children with disabilities. While these slots are not specifically allocated to children with disabilities, California ensures that there are direct contract slots available specifically for children with disabilities through its application of child care priorities. In direct-contract programs as in all of California's child care and development programs, if two or more families are in the same priority for child care services in relation to income, the family that has a child with exceptional needs shall be admitted first. All of the providers where the 54,327 slots are located are CCDF eligible providers that meet all CCDF requirements. The funding used for CCTR and for CFCC is federal CCDF funding and state general funds.<br>In addition, Child Care for Children with Severe Disabilities (CHAN) provides $1.9 million State General Fund in the budget to support 111 children and young adults with severe disabilities under 21 years of age. |
| Connecticut | Region I | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Colorado | Region VIII | Initial Submission | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Under CCCAP, each county has the option of developing slot contracts with licensed child care centers and family child care homes. Two counties are currently approved to offer slot contracts. | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Delaware | Region III | Initial Submission | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Our "state-funded" early care and education (SFECE) initiative blends state and federal funding to fund child care "seats." Delaware will utilize CCDF funding each program year to expand SFECE contracts to achieve the new CCDF rule goals. SFECE program years align to the state fiscal year.<br><br>Child enrollment in our state-funded early care and education (SFECE) program is managed by the program itself, not by the Lead Agency. The Department of Education contracts with individual SFECE programs, statewide, to perform the Eligibility, Recruitment, Selection, Enrollment and Attendance portions of the Head Start Program Performance Standards. The Department lists each SFECE program on its website so that parents can choose to enroll their child for free if they meet the SFECE eligibility requirements.<br><br>The Department of Education also contracts with a vendor to provide non-traditional hour care on Saturday and Sunday each month to families participating in Military Drill weekends. | | X | At least 10% of 1,703 seats in state fiscal year 2025 is at least 170 seats statewide per year. This number will change with each program year within the Federal Years 2025 through 2027. |
| Georgia | Region IV | Amendment #2 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Guam | Region IX | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Hawaii | Region IX | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Idaho | Region X | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Indiana | Region VI | Amendment #2 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Iowa | Region VII | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Kentucky | Region IV | Amendment #1 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Maine | Region I | Amendment #3 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Michigan | Region V | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| District of Columbia | Region III | Initial Submission | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Grants for child care slots are available for infant and toddler care and school-age care for children with disabilities. Families of children with disabilities will have a choice to enroll in a grant-funded Access to Quality Child Care for Children with Disabilities program or access child care through any Level I or Level II child care provider or an in-home provider through a subsidy voucher. | | | | X | OSSE's Access to Quality Child Care for Children with Disabilities grant program for direct child care slots for infants and toddlers and school-age children with disabilities will enroll children beginning in FY25. OSSE anticipates serving up to 175 infants, toddlers, and school-age children. Since the grants have not been awarded yet, OSSE does not know the precise number of children or how the number of slots will be allocated across age groups. Grantees must be child subsidy providers and the dedicated slots will be used for subsidy-eligible children. The cost-per child included in grant awards will provide higher subsidy payment rates for contracted slots as compared to OSSE's subsidy payment rate for children with special needs accessing vouchers. In FY25, OSSE will use local subsidy funding for these grants. |
| Louisiana *compliant for infants and toddlers and underserved geographic | Region VI | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | To help build the supply of infant and toddler care, the Lead Agency offers infant, toddler, and three-year-old contracted care. These contracts have been offered statewide, though some parishes (approximately 40%) have not yet accepted these contracted seats. Communities are not required to contract for direct service slots. Although not all parishes have yet chosen to implement contracts, all parishes in the state have been offered the opportunity to request contracts. The Lead Agency will be working with those parishes who have not yet implemented contracts to build capacity and opportunity for future contracts.<br><br>With children being served through contracted seats in both urban and rural areas across the geographic regions of the state, the contracted seat program allows the Lead Agency to ensure that families, including in rural areas, have access to child care assistance. CCDF-certified providers statewide are eligible to request contracts, and contracts are awarded in order to build supply in underserved geographic areas and for underserved groups of children. Parents are guaranteed choices when selecting a provider because parents may be awarded a voucher seat or a contracted seat: parents who wish to select a CCDF provider who is not receiving a contracted seat may apply for the CCAP voucher program instead. The Lead Agency will also be working with all parishes to ensure the full expansion of contracted seats statewide. | | X | Louisiana will be requesting a waiver in order to determine how to implement grants/contracts for children with disabilities, since young children with disabilities are already categorically eligible to receive services, even when there is a waitlist. |
| Mississippi | Region IV | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Montana | Region VIII | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Florida | Region IV | Initial Submission | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The DEL makes contracted slots available to all ELCs. Contracted slots may be used to address capacity issues such as child care deserts, infant/toddler care availability, and care during nontraditional hours. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholder Information on parental choice is made widely available to parents through the DEL website and consumer education materials provided by the ELCs and DEL. Further, when parents become eligible for SR, they must sign a Terms and Conditions agreement that acknowledges their rights to choose from a variety of child care categories pursuant to 45 CFR 98.30. Parents are not limited to selecting providers that receive contracted slots; those that choose to utilize services with ELCs implementing contracted slots have access to the full range of child care services available. | | X | Contracted Slots are made available to ELCs as needed. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholders. |
| Maryland | Region III | Amendment #1 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Nebraska | Region VII | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| New Hampshire | Region I | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| North Carolina | Region IV | Amendment #1 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| North Dakota | Region VIII | Amendment #1 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Northern Mariana Islands | Region IX | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Oklahoma | Region VI | Amendment #1 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Illinois | Region V | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The application used by contracted providers is the same used by the certificate program and lists all qualified provider types. Contracted providers utilize the same eligibility system as the certificate program enabling the transfer of families between contracted and certificate providers without interruption to the 12-month eligibility period. Child Care Resource and Referral agencies are required to work with all families seeking child care. Based on the parent's needs, the CCR&R will offer a referral list of providers in their area who are listed on the CCR&R provider database. Vacancy checks are done by the CCR&R and providers may contact the CCR&R to identify vacancies.<br><br>The Lead Agency does not allocate slots per population type.  This is determined by licensed capacity. | | X | Slots funded through Site Administered contracts with centers and home networks are open to families enrolled with the provider who are determined eligible for subsidy. Sites may apply for a 20% add-on to standard rates for caring for children with special needs. These contracts do not specify how the slot are allocated by the provider, including designated slots for any specific population or locations. |
| Minnesota | Region V | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The contract for Migrant Child Care services reserves child care slots at Head Start programs where possible; in areas of the state where an eligible family is seeking services but Head Start is not an accessible option, the contracted slot goes to a community-based child care program that meets Head Start standards. This ensures that children served by these contracted slots receive care that meets high standards of quality while remaining flexible to ensure care meets the family's needs in terms of location, hours, and availability. | | X | 65 (on average per fiscal year) |
| Missouri | Region VII | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Lead Agency offers competitive bids for Early Head Start contracts in eight areas of the state for slots for young children. These contracted slots are offered in addition to the availability of other contracted programs in the community. | | | |
| Rhode Island | Region I | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Utah | Region VIII | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Vermont | Region I | Amendment #3 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Virgin Islands | Region II | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Kansas | Region VII | Amendment #2 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Kansas Early Head Start Child Care Partnerships provides intensive, comprehensive program designed services to individualize to the unique strengths and needs of each child and family. KEHS programs are required to involve parents and community representatives in all areas of the program, including policy, program design, curriculum, and management decisions. All KEHS programs follow Head Start Performance Standards that require at least 10 percent of total enrollment slots be made available to children with disabilities. Kansas Early Head Start Child Care Partnerships also offer comprehensive services to childcare partner programs that exhibit needs, desires to participate, and has willingness to follow enhanced program regulations. KEHS grantees also offer their own center- based classes. Three hundred and fifty-nine slots are available in 38 Counties in Kansas. Counties included are Allen, Anderson, Bourbon, Ford, Clay, Washington, Republic, Cloud, Ottawa, Shawnee, Douglas, Franklin, Lyon, Ellis, Rush, Russell, Rooks, Saline, Dickinson, McPherson, Finney, Grant, Geary ,Gray, Hamilton, Haskell, Kearny, Morton, Neosho, Scott, Seward, Stanton, Stevens, Wichita, Wyandotte, Cherokee, Crawford, Labette and Montgomery. Services are provided by these entities: Bright Beginnings (KEHS CCP), Clay County Child Care (KEHS CCP), Community Action, Inc. (KEHS CCP), East Central Kansas Economic Opportunity Corporation (ECKAN) (KEHS CCP), Early Childhood Connections (KEHS CCP), Heartland Early Education (KEHS CCP), Kansas Children's Service League (KCSL) (KEHS CCP), Project Eagle (KEHS CCP), and Southeast Kansas- Community Action Program (SEK-CAP) (KEHS CCP). | | X | 36, all Kansas Early Head Start Child Care Partnership programs follow Head Start Performance Standards that require at least 10 percent of total enrollment slots be made available to children with disabilities. |
| Nevada *compliant for infants and toddlers | Region IX | Initial Submission | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Parents have the option of enrolling a child directly with the contracted provider or enrolling the child under a certificate care provider (cannot use both types for the same child). Parents with multiple children can choose the appropriate care setting for each child and enroll through either certificate, contracted slot (OST/OSR), or wraparound (Head Start/Early Head Start) care. The CCR&R agencies which administer the subsidy program in Nevada on the lead agency's behalf hold the contracts with the OST and EHS/HS organizations. The CCR&R agencies are provided budget amounts for these contracts set by the lead agency which allow the contracted providers to serve a specific number of CCDF-eligible children. These contracted slots are only available to CCDF-eligible children. | | | | | |
| Virginia | Region III | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Washington | Region X | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Massachusetts | Region I | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | EEC contracts with center-based child care programs, including school age programs, and with family child care systems for family child care services at affiliated licensed family child care homes to ensure that families have a variety of choices for care providers. When families are offered a contracted seat with one of the contracted providers they are informed of their choices within that contracted providers network of programs if applicable. Many of the contracted center based programs and family child care systems have multiple programs, locations and types of care. The contracted provider's Family Access Administrators review documents and counsels the family during intake about parent choice and their right to change providers at any time, the family signs all documents to ensure they were counseled on their rights. Additionally, families are informed of the option to move from their contracted seat to a voucher if the contracted seat no longer meets the needs of their family. | | | X | EEC uses contracts as a mechanism for serving children with the highest needs which is inclusive of children with disabilities. Children with disabilities are considered a priority and are identified through the screening and enrollment for contracts. EEC serves approximately 110 children with disabilities through contracts. |
| New Mexico | Region VI | Initial Submission | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | New Mexico will not be requesting a waiver for grants or contracts. New Mexico only has one jurisdiction, statewide. ECECD will provide grants or contracts for infants and toddlers. The implementation will begin in areas where there is the highest need for infant and toddler slots and will expand as the need and resources allow.<br><br>ECECD's approach to contracting for slots will specifically focus on the infant and toddler age group but will also be targeted toward children in underserved geographic areas. ECECD will release a Request for Proposals (RFP) that prioritizes providers in underserved geographic areas (e.g., areas with less than average child care slots) and will require providers to serve a minimum of children with developmental delays and disabilities. Therefore, the number for these categories overlap with the 2,000 contracted slots ECECD plans for Infants and Toddlers. | X | At least 100 slots will be allocated through contracts for children with developmental delays and disabilities. |
| New Jersey *compliant for infants and toddlers and underserved geographic areas | Region II | Initial Submission | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | DHS/DFD funds the Parent Linking Program (PLP), which embraces a two-generational approach that provides child care services and comprehensive wraparound services to teen parents in middle and high schools. Programs are located in six counties, managed by community-based organizations who provide intensive case management to the teens, and work closely with the schools, CCR&R, and child care providers. The PLP is contracted for approximately eighty (80) infant slots and to provide high-quality child-care services and comprehensive services for the teen parents to be successful in graduating high school.<br><br>In addition, DHS/DFD has child care community voucher (CCVC) slots managed by the county CCR&Rs and Human Service Advisory Councils (HSAC). They work together to implement a Child Care Capacity and Need Roster for the county. Based on the county's child care needs, slots are dedicated to providers who are required to sign an agreement to serve lower income families and not impose fees above the State's assistance payment rate. Thirteen (13) out of 21 counties in New Jersey have dedicated CCVC slots. | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| New York | Region II | Initial Submission | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. LDSSs that do choose to contract for child care slots cannot require that families use contracted providers. Families in such LDSSs still have access to the full range of providers and are not required to use a contracted provider. Additionally, OCFS has Memoranda of Understanding (MOU) with the State University of New York (SUNY) and the City University of New York (CUNY) to provide contracted care to student parents. | | X | OCFS allows LDSSs to individually choose to offer contracts for child care slots. It is left up to the LDSSs whether they choose to or not. As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. It is not currently known how many slots are allocated at the local level for children with disabilities but if they are eligible for CCAP, they are covered by local contracts. OCFS intends to begin to collect more information on available slots and publish that information on the OCFS website in 2025. |
| Ohio | Region VI | Amendment #1 | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Oregon | Region X | Amendment #1 | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Lead Agency contracts with CCR&Rs to administer these sub-contracts. For Baby Promise contracted slots, cost per child amounts are individually negotiated with the local CCR&Rs and programs based upon provider type, estimated cost of care based on provider budgets and region. Providers indicate that these payments have stabilized their business.<br><br>The Teen Parent Program currently serves children in 21 school districts around the state as well as through 1 Head Start agency. The teen parent contractors serve the parenting teens who have been identified and referred to them through their own school district processes. Many of the teen parent contractors have onsite child care centers that teens can use, some also subcontract out if the school does not have an onsite center or the teen chooses to use another provider.<br><br>The Lead Agency holds contracts with Head Start providers (typically centers) as well as Early Head Start partnership home-based care providers. If a family is eligible for ERDC, they can use any provider eligible to receive ERDC subsidy payments. Contracted slots in the Head Start program are approved for full-time hours. Head Start and Early Head Start polices prioritize children with disabilities, with a goal of at having 10% of the children in each program who qualifies for Early Intervention Services. The Lead Agency contracts support this goal by paying the Special Needs Rate or High Needs Rate to providers for qualifying children. The High Needs rate is available to all children receiving ERDC, including those served by contracts, and is paid with CCDF quality dollars on top of the subsidized rate.<br><br>The Lead Agency also provides contracted slots for apprenticeships through the Bureau of Labor and Industry (BOLI), funded with BOLI state general funds.<br><br>Oregon is unclear as to whether its current grants and contracts meet the intent of the newly released CCDF final rule and has requested a waiver on May 6, 2024 to provide extra time (through August 2026) in the event that they do not. | | X | All three Oregon regions served by Baby Promise prioritize children with disabilities. The total number of slots currently budgeted for are approximately 190; however, the number of slots specifically for children with disabilities is unable to be provided at this time.<br><br>Head Start and Early Head Start polices prioritize children with disabilities, with a goal of at having 10% of the children in each program who qualifies for Early Intervention Services. The Lead Agency contracts support this goal by paying the Special Needs Rate or High Needs Rate to providers for qualifying children. The High Needs rate is available to all children receiving ERDC, including those served by contracts, and is paid with CCDF quality dollars on top of the subsidized rate. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Pennsylvania *compliant for infants and toddlers and underserved geographic areas | Region III | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Infant/Toddler Contracted Slots (ITCS) Program uses CCDF funding and is an alternative to the traditional voucher system. Instead of having funding follow the child, as in the traditional voucher system, the ITCS program, awards funding to a provider. If a child leaves the funded provider, the provider continues to be paid for the slot and is responsible to fill the slot with a different child eligible for Child Care Works (CCW). The program provides funding for 850 slots through ELRC contracts with 56 eligible Keystone STAR 3 or 4 providers. The eligibility for ITCS follows the same eligibility criteria for CCW funding. At the time eligibility is determined, families are provided information on the ITCS program (if slots are available). Eligible families may choose to enroll in either ITCS program or traditional subsidy funding.<br><br>Pennsylvania Pre-K Counts (PA PKC) is a grant program to expand pre-kindergarten opportunities for eligible low income children with a focus on increasing availability in areas with high unmet need across the commonwealth. Eligible families must meet income requirements. Providers consider other factors during the enrollment process such as English Language Learners (ELL), community aspects, | | | | |
| Puerto Rico *compliant for infants and toddlers and children with disabilities | Region II | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The ACUDEN Quality System (AQS) serves as a comprehensive platform that hosts a registry of child care providers for children aged 0 to 5 years old throughout Puerto Rico, encompassing those with direct contracts. AQS enables parents to access detailed information about each provider, including their location, the variety of care services they offer, and the academic and professional credentials of their staff. The platform's commitment to transparency and the ease of access to this critical information empower parents to make informed decisions when choosing the child care provider that best meets their preferences and standards, ensuring the well-being and development of their children | | | X | Contracts: 305 – Voucher: 608 |
| South Carolina | Region IV | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Through the CCDF-funded Early Transition initiative, ABC Quality enrolled programs agree to reserve child care slots for children with developmental delays/disabilities. The slots are made available with CCDF funding. This initiative is a collaborative partnership with ABLE-SC, IDEA/Part C services at the Department of Health and Human Services, IDEA/Part B at the South Carolina Department of Education, South Carolina Inclusion Collaborative, and the SC Partners for Inclusion program. ABLE-SC conducts child care facility accessibility assessments and provides technical assistance/trainings based on findings during the assessment for the facility staff. School districts participating in this initiative are required to attend the summer Special Education Itinerant Teacher (SEIT) academy for training regarding coordination with and support for child care providers serving children with developmental delays/disabilities. The placement in which a child receives their special education supports and services is determined by the IEP team. The parent is a critical member of the IEP and is part of that decision-making process. The IEP must consider the general education placement first when determining a child's least restrictive environment. Early transitions expands the continuum of placements available to 3 year old children with IEPs to include a child care classroom, which is a general education setting. The Lead Agency plans to request an implementation wavier to expand availability of slots for infants and toddlers, children with special needs, underserved populations based on geographic locations. | X | The number of slots set aide for this initiative is 10. |
| South Dakota | Region VIII | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Licensed child care centers provide the contractual services for CCDF eligible children whose families participate in TANF, one of South Dakota's most vulnerable populations with limited access to resources. Contracts are available statewide but currently only two urban areas participate. Only these two areas have enough CCDF eligible families participating in the TANF program to generate provider interest and justify slots. | | | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Tennessee | Region IV | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Texas | Region VI | Initial Submission | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | All 28 Board areas may implement contracted slots, based upon legislative changes enacted in 2019. Texas Labor Code §302.0461 allows Boards to contract with Texas Rising Star programs to reserve slots to provide child care services for children participating in the CCS program. Rural Capital Area is currently designing a model to implement contracted slots for children in child care deserts in Summer 2024. | | X | Boards have the option of contracting with child care providers for slots dedicated to children with disabilities if this is a need in their area identified in the Board's strategic Plan. On April 30, 2024, the Commission approved publication of proposed rule amendments for public comment. One of the proposed changes will add increasing the number of places reserved for children with disabilities as an optional use of contracted slots for all Boards. If the final rule amendments are approved, the change will become effective December 9, 2024. |
| West Virginia | Region III | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |
| Wisconsin | Region V | Initial Submission | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Lead Agency's contract with United Migrant Opportunity Services (UMOS) specifies that parents may choose any provider who is eligible to receive Wisconsin Shares. Due to the recent change in CCDF rules (effective 4/30/2024) the Lead Agency has submitted a waiver to the Administration for Children and Families, Office of Child Care (ACF-OCC) to secure additional authority to provide services through grants and contracts. This waiver process will include statutory, administrative rule, and policy changes that could take up to two years to accomplish with the continued support of the State Legislature and key early care and education stakeholders. | | | |
| Wyoming | Region VIII | Initial Submission | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | |

Content Report For 4.5.1. Child care services available through grants or contracts
Fiscal Year: FY 2025-2027

Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | Infants and toddlers. Number of slots allocated through grants or contracts: | Describe: |
|---|---|---|---|---|

| | | |
|---|---|---|
| Alabama | Region IV | Amendment #2 |
| Alaska | Region X | Initial Submission |
| American Samoa | Region IX | Initial Submission |
| Arizona | Region IX | Amendment #2 |

| | | | | |
|---|---|---|---|---|
| Arkansas | Region VI | Amendment #1 | X | OEC will seek to serve approximately 50 children. |

| | | | | |
|---|---|---|---|---|
| California | Region IX | Amendment #1 | X | LPCs identify areas of local child care need (such as Infant and Toddler gaps and child care deserts) through local level annual Zip Code Priority Reports and Needs Assessment Reports, every 5 years. LPCs us data to determine local funding priorities and critical areas of need to support capacity building. In addition to data zip code data, LPCs Collaborate with subsidized and nonsubsidized child care providers, county welfare departments, human service agencies, regional centers, job training programs, parent organizations, early start family resource centers, local child care resource and referral programs, and other interested parties to identify local level child care gaps like not having enough spaces for infant and toddler care. LPC zip code data is then used to support The General Child Care and Development (CCTR) Request for Application (RFA) process. The Child Care and Development Division (CDSS) prioritizes applications (1) providing direct services to infants and toddlers and (2) serving children in underserved areas per the LPC priorities. Award eligibility and distribution is determined by slot-type information and headquarter address information provided by the applicant. Funding is not guaranteed to all eligible applicants due to the amount of funding provided in the budget each year.<br><br>The CCDD has been able to award the full request of infant/toddler slots to eligible applicants regardless of LPC priority during the last three fiscal years. |

| | | | | |
|---|---|---|---|---|
| Connecticut | Region I | Amendment #2 | | |
| Colorado | Region VIII | Initial Submission | X | As of 5/13/2024, 3 slots are allocated for children ages 0-36 months who are also engaged in a child welfare program. |

| | | | | |
|---|---|---|---|---|
| Delaware | Region III | Initial Submission | X | 166 infant seats and 129 toddler seats out of 1,703 seats in state fiscal year 2025. This number will change with each program year within the Federal Years 2025 through 2027. |

| | | |
|---|---|---|
| Georgia | Region IV | Amendment #2 |
| Guam | Region IX | Initial Submission |
| Hawaii | Region IX | Initial Submission |
| Idaho | Region X | Initial Submission |

| | | |
|---|---|---|
| Indiana | Region VI | Amendment #2 |
| Iowa | Region VII | Initial Submission |
| Kentucky | Region IV | Amendment #1 |
| Maine | Region I | Amendment #3 |

| | | |
|---|---|---|
| Michigan | Region V | Amendment #1 |

| | | | | |
|---|---|---|---|---|
| District of Columbia | Region III | Initial Submission | X | OSSE's Access to Quality Child Care for Children with Disabilities grant program for direct child care slots for infants and toddlers and school-age children with disabilities will enroll children beginning in FY25. OSSE anticipates serving up to 175 infants, toddlers, and school-age children. Since the grants have not been awarded yet, OSSE does not know the precise number of infants and toddlers that will be served through these direct slots. Grantees must be child subsidy providers and the dedicated slots will be used for subsidy-eligible children. The cost-per child included in grant awards will provide higher subsidy payment rates for contracted slots as compared to OSSE's subsidy payment rate for children with special needs accessing vouchers. In FY25, OSSE will use local subsidy funding for these grants. |

| | | | | |
|---|---|---|---|---|
| Louisiana *compliant for infants and toddlers and underserved geographic | Region VI | Amendment #1 | X | The Lead Agency is serving approximately 2500 infants and toddlers through grant/contract slots. The number of infants and toddlers served may overlap with the number of children in underserved areas. |
| Mississippi | Region IV | Amendment #1 | | |

| | | |
|---|---|---|
| Montana | Region VIII | Amendment #1 |

| | | | | |
|---|---|---|---|---|
| Florida | Region IV | Initial Submission | X | Contracted Slots are made available to ELCs as needed. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholders. |

| | | |
|---|---|---|
| Maryland | Region III | Amendment #1 |
| Nebraska | Region VII | Initial Submission |
| New Hampshire | Region I | Initial Submission |
| North Carolina | Region IV | Amendment #1 |

| | | |
|---|---|---|
| North Dakota | Region VIII | Amendment #1 |
| Northern Mariana Islands | Region IX | Initial Submission |
| Oklahoma | Region VI | Amendment #1 |

| | | | | |
|---|---|---|---|---|
| Illinois | Region V | Amendment #1 | X | Slots funded through Site Administered contracts with centers and home networks are open to families enrolled with the provider who are determined eligible for subsidy. These contracts do not specify how the slot are allocated by the provider, including designated slots for any specific population or locations. |

| | | | | |
|---|---|---|---|---|
| Minnesota | Region V | Amendment #2 | X | 335 (on average per fiscal year) |
| Missouri | Region VII | Amendment #1 | X | Subsidy eligible children qualify for slots for children participating in Early Head Start. Not all available slots are filled with subsidy eligible children (i.e., prenatal, incarcerated parent, and child abuse/neglect). |
| Rhode Island | Region I | Initial Submission | | |

| | | |
|---|---|---|
| Utah | Region VIII | Initial Submission |
| Vermont | Region I | Amendment #3 |
| Virgin Islands | Region II | Initial Submission |

| | | | | |
|---|---|---|---|---|
| Kansas | Region VII | Amendment #2 | X | 359, all Kansas Early Head Start Child Care Partnership slots are for infants and toddlers. |

| | | | | |
|---|---|---|---|---|
| Nevada *compliant for infants and toddlers | Region IX | Initial Submission | X | 310 |
| Virginia | Region III | Amendment #1 | | |

| | | |
|---|---|---|
| Washington | Region X | Initial Submission |

| | | | | |
|---|---|---|---|---|
| Massachusetts | Region I | Amendment #1 | X | EEC has allocated approximately 5,235 contracted slots for infant and toddler populations including our family child care ‘under 2’ and ‘over 2’ contracts. |

| | | | | |
|---|---|---|---|---|
| New Mexico | Region VI | Initial Submission | X | At least 900 slots will be allocated through contracts for infants and toddlers. |

| | | | | |
|---|---|---|---|---|
| New Jersey *compliant for infants and toddlers and underserved geographic areas | Region II | Initial Submission | X | DHS/DFD offers a statewide Thriving by Three Infant and Toddler Child Care grant to licensed centers and Family Child Care providers. This grant supports the development and creation of infant and toddler slots statewide to encourage providers to expand child care slots over a three-year period (2023-2025). Grant funds were awarded to providers in 20 out of 21 counties in New Jersey. The grants help to build supply and increase families' access to high quality providers who have committed to increasing infant and toddler slots. A total of 383 licensed centers and 229 FCC providers were awarded Thriving by Three grants to fund a total of 4,354 new infant/toddler slots statewide.<br><br>As noted above, DHS/DFD funds the Parent Linking Program (PLP) in six urban underserved counties. PLP provides eighty (80) infant slots for high-quality child-care services and includes comprehensive case management services that support the success of teen parents in completing their high school education.<br><br>In addition, DHS/DFD has Child Care Community Voucher (CCVC) slots managed by the county CCR&Rs and Human Service Advisory Councils (HSAC). They work together to implement a Child Care Capacity and Need Roster for the county. Based on the county's child care needs, slots are dedicated to providers who are required to sign an agreement to serve lower income families and not impose fees above the State's assistance payment rate. New Jersey has awarded 3,803 dedicated CCVC slots in 13 out of 21 counties. |

| | | | | |
|---|---|---|---|---|
| New York | Region II | Initial Submission | X | OCFS allows LDSSs to individually choose to offer contracts for child care slots. It is left up to the LDSSs whether they choose to or not. As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. It is not currently known how many slots are allocated at the local level for infants and toddlers but if they are eligible for CCAP, they are covered by local contracts. OCFS intends to begin to collect more information on available slots and publish that information on the OCFS website in 2025. |
| Ohio | Region VI | Amendment #1 | | |

| | | | | |
|---|---|---|---|---|
| Oregon | Region X | Amendment #1 | X | All three Oregon regions served by Baby Promise serve infants and toddlers. The total number of slots currently budgeted for are approximately 190. All of these slots qualify as infant and toddler. |

| | | | | |
|---|---|---|---|---|
| Pennsylvania *compliant for infants and toddlers and underserved geographic areas | Region III | Amendment #1 | X | 850 slots |

| | | | | |
|---|---|---|---|---|
| Puerto Rico *compliant for infants and toddlers and children with disabilities | Region II | Amendment #1 | X | Contracts: 2,153 – Voucher: 379 |

| | | |
|---|---|---|
| South Carolina | Region IV | Amendment #1 |

| | | |
|---|---|---|
| South Dakota | Region VIII | Amendment #2 |
| Tennessee | Region IV | Initial Submission |

| | | | | |
|---|---|---|---|---|
| Texas | Region VI | Initial Submission | X | Boards have the option of contracting with child care providers for infant and toddler slots. Contracts in Alamo for 50 infant and toddler slots ended in February 2024. Currently, no Boards are offering contracted slots. |
| West Virginia | Region III | Initial Submission | | |

| | | |
|---|---|---|
| Wisconsin | Region V | Initial Submission |
| Wyoming | Region VIII | Initial Submission |

Content Report For 4.5.1. Child care services available through grants or contracts
Fiscal Year: FY 2025-2027

Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | Children in underserved geographic areas. Number of slots allocated through grants or contracts: Describe: |
|---|---|---|---|
| Alabama | Region IV | Amendment #2 | |

| | | | | |
|---|---|---|---|---|
| Alaska | Region X | Initial Submission | | |
| American Samoa | Region IX | Initial Submission | | |
| Arizona | Region IX | Amendment #2 | | |
| Arkansas | Region VI | Amendment #1 | X | OEC will seek to serve approximately 50 children. |

| | | | | |
|---|---|---|---|---|
| California | Region IX | Amendment #1 | X | The Migrant Child Care and Development Program (CMIG) provides $43.8 million in State General Fund to support 2,226 children for children of migrant agricultural families.<br>Counties serving up to 30 children through the CMIG program include: San Luis Obispo, Solano, Colusa, Imperial, Ventura, Siskiyou, and Merced.<br>Counties serving between 31-100 children through the CMIG program include: San Diego, Stanislaus, Riverside, San Joaguin, Sacramento, Monterey, and Fresno.<br>Counties serving > 100 children through the CMIG program: Kern & Tulare. |
| Connecticut | Region I | Amendment #2 | | |

| | | |
|---|---|---|
| Colorado | Region VIII | Initial Submission |

| | | |
|---|---|---|
| Delaware | Region III | Initial Submission |
| Georgia | Region IV | Amendment #2 |

| | | |
|---|---|---|
| Guam | Region IX | Initial Submission |
| Hawaii | Region IX | Initial Submission |
| Idaho | Region X | Initial Submission |
| Indiana | Region VI | Amendment #2 |
| Iowa | Region VII | Initial Submission |

| | | |
|---|---|---|
| Kentucky | Region IV | Amendment #1 |
| Maine | Region I | Amendment #3 |
| Michigan | Region V | Amendment #1 |

| | | | | |
|---|---|---|---|---|
| District of Columbia | Region III | Initial Submission | X | The District is one geographic area; however, the District monitors child care supply and access across all eight wards of the city and prioritizes investments that support children, families and child care providers furthest from opportunity. OSSE's Access to Quality Child Care for Children with Disabilities grant program for direct child care slots for infants and toddlers and school-age children with disabilities will enroll children beginning in FY25. The contracted slots will be awarded on a competitive basis and OSSE will take indicators of geographic need into account in awarding grants in order to ensure that children in underserved geographic areas of the District benefit from direct child care slots. |

| | | | | |
|---|---|---|---|---|
| Louisiana *compliant for infants and toddlers and underserved geographic | Region VI | Amendment #1 | X | The Lead Agency is serving approximately 900 children in underserved geographic (rural) areas through grant/contract slots. The number of infants and toddlers served may overlap with the number of children in underserved (rural) areas. |
| Mississippi | Region IV | Amendment #1 | | |
| Montana | Region VIII | Amendment #1 | | |

| | | | | |
|---|---|---|---|---|
| Florida | Region IV | Initial Submission | X | Contracted Slots are made available to ELCs as needed. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholders. |
| Maryland | Region III | Amendment #1 | | |

| | | |
|---|---|---|
| Nebraska | Region VII | Initial Submission |
| New Hampshire | Region I | Initial Submission |
| North Carolina | Region IV | Amendment #1 |
| North Dakota | Region VIII | Amendment #1 |
| Northern Mariana Islands | Region IX | Initial Submission |

| | | | | |
|---|---|---|---|---|
| Oklahoma | Region VI | Amendment #1 | | |
| Illinois | Region V | Amendment #1 | X | Slots funded through Site Administered contracts with centers and home networks are open to families enrolled with the provider who are determined eligible for subsidy. These contracts do not specify how the slot are allocated by the provider, including designated slots for any specific population or locations. |

| | | | | |
|---|---|---|---|---|
| Minnesota | Region V | Amendment #2 | X | 295 (on average per fiscal year) |
| Missouri | Region VII | Amendment #1 | | |
| Rhode Island | Region I | Initial Submission | | |

| | | |
|---|---|---|
| Utah | Region VIII | Initial Submission |
| Vermont | Region I | Amendment #3 |
| Virgin Islands | Region II | Initial Submission |

| | | | | |
|---|---|---|---|---|
| Kansas | Region VII | Amendment #2 | X | 359, all Kansas Early Head Start Child Care Partnership grantees have completed community needs assessments to determine the need for their services in their community and help them determine the numbers that they serve, so all areas have been determined as underserved. Priority was given to those that served in the 5-year estimate of the top 5 counties with the highest official poverty rate and the 5 counties with the most persons in poverty according to the Census American Community Survey 2019. The high priority counties are Riley, Crawford, Stevens, Kearny, Woodson, Sedgwick, Johnson, Wyandotte, Douglas and Shawnee. Kansas Early Head Start Child Care Partnership services are serving children in the high priority counties of Crawford, Stevens, Kearny, Wyandotte, Douglas and Shawnee. |

| | | |
|---|---|---|
| Nevada *compliant for infants and toddlers | Region IX | Initial Submission |
| Virginia | Region III | Amendment #1 |
| Washington | Region X | Initial Submission |

| | | | | |
|---|---|---|---|---|
| Massachusetts | Region I | Amendment #1 | X | EEC established seat allocation targets to prioritize access underserved geographic areas which EEC defined as child care deserts and areas with high child poverty. This prioritization was used in determining the target seat allocation for approximately 12,000 seats. Though EEC did not designate a specific number of seats, this prioritization was a focus of the overall seat allocation analysis and formula for contracts. Additionally, EEC provided a list of the child care deserts and high child care poverty areas and contracted providers were asked to identify if their program serves these areas. Programs in these areas received additional points in their bid score EEC is actively in the procurement process for its contracts and will be collecting the number of seats/slots as a part of the new contracts starting 10/1/24. |

| | | | | |
|---|---|---|---|---|
| New Mexico | Region VI | Initial Submission | X | At least 1000 slots will be allocated through contracts for children in underserved communities. |

| | | | | |
|---|---|---|---|---|
| New Jersey *compliant for infants and toddlers and underserved geographic areas | Region II | Initial Submission | X | The three programs referenced specifically target families and children in underserved areas of the state.<br>1. Thriving by Three grants operate in communities identified as child care deserts with few or no options for high-quality child care for infants and toddlers. A total of 383 licensed centers and 229 FCC providers were awarded funds that will create a total of 4,354 new infant/toddler slots in underserved communities across the state. Thriving-by-Three grants are State-funded.<br><br>2. CCVC slots are awarded in underserved areas with demonstrated community needs as determined by the county CCR&Rs and HSAC. NJ has 3,803 CCVC slots in 13 out of 21 counties.<br>CCVC are direct service dedicated slots (based on a child care community needs assessment) that are targeted to providers who agree to service CCDF families.<br>CCVC is based on family's eligibility and unique circumstances related to income and work hours and is applicable to all age groups; rather than targeted direct service contracts to address particular categories of children's needs, such as disability or infant and toddler care. CCVC contracts are CCDF-funded.<br><br>3. PLP serves teen parents in urban underserved middle and high schools in six counties. PLP sites provide eighty (80) infant slots for the teen parents enrolled in the program. PLP contracts are all located in urban poor districts and are directed towards infant/toddlers through a direct service contract. PLP contracts are CCDF-funded.<br><br>DFD will be overhauling these programs to align with the CCDF direct service contract regulation provisions. Currently, CCVC is processed in the same manner as all agreements. New Jersey submitted a waiver request for direct contracts for children with disabilities. |

| | | | | |
|---|---|---|---|---|
| New York | Region II | Initial Submission | X | OCFS allows LDSSs to individually choose to offer contracts for child care slots. It is left up to the LDSSs whether they choose to or not. As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. It is not currently known how many slots are allocated at the local level for children in underserved geographic areas but if they are eligible for CCAP, they are covered by local contracts. OCFS intends to begin to collect more information on available slots and publish that information on the OCFS website in 2025. |
| Ohio | Region VI | Amendment #1 | | |

| | | | | |
|---|---|---|---|---|
| Oregon | Region X | Amendment #1 | X | All three Oregon regions served by Baby Promise are identified as underserved. The total number of slots currently budgeted for are approximately 190. All of these slots qualify as children in underserved geographic areas. |

| | | | | |
|---|---|---|---|---|
| Pennsylvania *compliant for infants and toddlers and underserved geographic areas | Region III | Amendment #1 | X | 29,453 full day slots<br>920 part day slots |

| | | |
|---|---|---|
| Puerto Rico *compliant for infants and toddlers and children with disabilities | Region II | Amendment #1 |

| | | |
|---|---|---|
| South Carolina | Region IV | Amendment #1 |
| South Dakota | Region VIII | Amendment #2 |

| | | | | |
|---|---|---|---|---|
| Tennessee | Region IV | Initial Submission | | |
| Texas | Region VI | Initial Submission | X | Boards have the option of contracting with child care providers for children in underserved areas, such as child care deserts. Currently, no boards are offering contracted slots. However, Rural Capital is considering contracts for child care deserts in Lee, Fayette, Burnet, or Llano counties. |
| West Virginia | Region III | Initial Submission | | |

| | | |
|---|---|---|
| Wisconsin | Region V | Initial Submission |
| Wyoming | Region VIII | Initial Submission |

Content Report For 4.4.1b. Provider payment based on authorized enrollment
Fiscal Year: FY 2025-2027 *29 Lead Agencies compliant
Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Describe: | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Describe: |
|---|---|---|---|---|---|---|---|---|
| Alabama | Region IV | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Alaska | Region X | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | AK is not meeting the requirement to pay based on authorized enrollment and will be submitting a waiver request for this requirement. |
| American Samoa | Region IX | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Arizona | Region IX | Amendment #2 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | The Lead Agency is requesting a waiver to implement this provision of the New CCDF Final Rule. The Lead Agency anticipates completion of this provision by August 2026. | | |
| Arkansas | Region VI | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | seeking to move toward a system that enables paying of providers based on enrollment. When this is accomplishe d, the long-term goal would be to pay providers prospectively . However, to accomplish this the technical systems for payment must be replaced with a system that is designed for the new purposes. The new | | |
| California | Region IX | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Colorado | Region VIII | Initial Submission | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | all licensed providers for authorized enrollment for children ages 0-36 months. CDEC program rules will be revised effective April 1, 2026 through the rule-making process that engages counties, child care providers, and family advocacy groups to pay based on enrollment for all ages which will allow time for | | |
| Connecticut | Region I | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Delaware | Region III | Initial Submission | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | The lead agency will be requesting a waiver as additional time will be needed to comply with this requirement. | | |
| District of Columbia | Region III | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Georgia | Region IV | Amendment #2 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Lead Agency cannot currently pay based on authorized enrollment and has submitted a waiver per Office of Child Care guidance. The Lead Agency has requested a waiver through August 1, 2026, and intends to use the time allowed to develop and implement the necessary policies and procedures to be compliant. |
| Guam | Region IX | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Hawaii | Region IX | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Indiana | Region VI | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Iowa | Region VII | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Lead Agency acknowledges the CCDF regulations regarding payment based on enrollment changed effective 4/30/2024. The Lead Agency's current IT system that handles provider payments does not have the capability to pay based on enrollment and the Lead Agency is exploring new IT solutions to meet this requirement. The Lead Agency intends to submit a waiver request to come into compliance on this provision. |
| Kansas | Region VII | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Kentucky | Region IV | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | |
| | | | | | | providing child care services by requiring the ELCs to reimburse the provider based on the child's authorized hours of care needed, either part-time or full-time. For a child who is authorized only full-time care an ELC shall not recoup or adjust a provider's reimbursement for days a child attends part-time. The ELC shall not reduce authorized hours of care prior to redetermination unless the parent requests a reduction in the authorized hours of care based on hours of care needed (Rule 6M-4.500, F.A.C.). |
| Florida | Region IV | Initial Submission | | No. | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The State currently supports fixed costs of providing child care service' by delinking provider payments from a child's occasional absences and providing full payment if a child is absent for up to a certain number of days in a month. In accordance with Rule 6M-4.500(4), F.A.C., reimbursement shall be authorized for no more than three absences per calendar month per child except in |
| Idaho | Region X | Initial Submission | | No. | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Idaho requires that rates charged by the child care provider must not exceed the usual and customary rates charged for child care to persons not entitled to receive benefits under ICCP. If a child care provider's established rates are not altered based on a child's attendance the subsidy payment is not altered. Idaho intends to apply for a transitional waiver as we develop additional strategies to pay by authorized enrollment not linked to a child's number of absences. |
| Illinois | Region V | Amendment #1 | | No. | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Illinois pays provider for 100% of the child's eligible days if they attended at least 70% of those days. To lessen the financial impact of extraordinary events which are beyond the control of child care providers, a center experiencing less than 50% of their expected CCAP enrollment due to an extraordinary event (epidemic, flooding, heat failure…) may apply for a Child Care Assistance Program (CCAP) Attendance Exemption. Illinois will be requesting a waiver to delay implementation of this requirements until policies, rules and systems are modified and a budget impact analyses is completed. Illinois was notified of non-compliance of with 45 CFR 98.45(l)(2) in January 2023. The lead agency required additional time to make payment system modifications to calculate the 70% attendance rule on a child-by-child basis. Due to the age of the current system, this may not be possible until the planned replacement of that system. |
| Louisiana | Region VI | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | |
| Maine | Region I | Amendment #3 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | |
| Maryland | Region III | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Massachusetts | Region I | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Michigan | Region V | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | License exempt (related and unrelated) child care providers are not paid by enrollment. Providers can bill for care provided up to the maximum number of bi-weekly hours approved for the child. Hourly rates are set and determined through the legislative budget process based on available funding. Each child is allotted 360 absence hours to be paid/used during the fiscal year. Due to a previous IRS audit payments to license exempt providers are made directly to the parent who must pay the provider. Michigan does not currently include/collect data on license exempt providers through the Market Rate Survey but gathers information from license exempt providers through stakeholders who conduct the onsite health and safety visit and provide training. The number of license exempt providers has increased 78% since 2021 indicating this method is supporting the stability of this choice. |
| Mississippi | Region IV | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| New Hampshire | Region I | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| New Jersey | Region II | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| New Mexico | Region VI | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| North Dakota | Region VIII | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Northern Mariana Islands | Region IX | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Oklahoma | Region VI | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | The Lead agency reimburses providers based on attendance with some absent days. The Lead Agency does not meet this provision of the final rule and will file a waiver. | | |

| | | | | | |
|---|---|---|---|---|---|
| Minnesota | Region V | Amendment #2 | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | assistance pays for a child's scheduled and authorized hours of attendance, not actual hours attended. If a child attends for any part of their authorized schedule, care is fully paid for that day with no restrictions. When a child is absent an entire day they were scheduled and authorized to be in care, |
| Missouri | Region VII | Amendment #1 | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Lead Agency pays providers based on a child's attendance in their child care program. The Lead Agency ensures providers have a current written agreement (i.e., contract) and a valid authorization for child care assistance, prior to receiving funds. The provider submits attendance |
| Montana | Region VIII | Amendment #1 | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Agency does not pay prospectively. The Lead Agency will implement a new database in 2025 with plans to incorporate prospective payment functionality. The Lead Agency will enact new policies to change payment methodology. Currently, the Lead Agency reimburses for the full payment amount if the child attends |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Nebraska | Region VII | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Lead Agency currently pays based on the child's attendance for all child care providers. Child care providers are allowed to bill up to 5 absent days per month per child. The Lead Agency will request a waiver from the Administration of Children and Families as they work to delink provider payments from occasional absences. The Lead Agency will request a waiver to obtain technical assistance on how to implement this requirement. |
| Nevada | Region IX | Initial Submission | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | types are paid by authorized enrollment at this time. All provider types are paid based on actual monthly attendance to conserve limited subsidy funds (i.e., providers are currently only reimbursed for days care is actually provided). When children do not attend multiple providers, the provider is paid the daily | | |
| Pennsylvania | Region III | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | does not pay any provider based on authorized enrollments. Currently, Pennsylvania makes payments to providers based on attendance. Pennsylvania is applying for a waiver to meet to meet the requirement of paying providers based on enrollment. The waiver is needed to provide time to make system changes and The Lead | | |
| Rhode Island | Region I | Initial Submission | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Agency is updating payment practices to reflect enrollment based payment during the waiver period provided by ACF to come into compliance with this requirement. | | |
| South Carolina | Region IV | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| South Dakota | Region VIII | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | |
| New York | Region II | Initial Submission | | No. | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | on authorized enrollment for any type of child care provider. Such a practice is impracticable due to current technology systems. Additionally, OCFS will be seeking a waiver related to this provision and based on the determination to seek changes to statute and regulations. As an alternate approach, OCFS regulations require that LDSSs must pay for up to 80 absence days per child per provider per state fiscal year. The provider must be duly licensed, registered, or enrolled. If a child is provided care by multiple providers in one year, each provider is entitled to up to 80 absences, as needed. LDSSs may not stipulate payment for less than 80 absences in their contracts with providers. Additionally, LDSSs also pay for up to 20 days for program closures per year. Although OCFS intends to submit a waiver request to OCC for compliance with the new Federal Rule regarding implementing paying based on enrollment, the current approach presents an alternative |
| North Carolina | Region IV | Amendment #1 | | No. | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | services is typically based on enrollment but in some instances may be based on attendance. Payment based on attendance occurs when a child is absent for more than ten (10) days during a service month, when the provider charges only on the basis of attendance, and when the provider has an unpaid closure day. Providers record daily attendance in the NC FAST Provider Portal. This payment methodology encourages families to consistently use the authorized child care services and also reduces the risk of fraudulent behavior. The Lead Agency recognizes that this is not compliant with current CCDF requirements and needs additional time to change the policy and make functionality changes in NC FAST to fully implement provider payments based on enrollment. The Lead Agency recognizes that this is not compliant with current CCDF requirements and needs additional time to change the policy and make functionality changes in NC FAST to |
| Ohio | Region VI | Amendment #1 | | No. | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | attendance with the exception that each child is eligible for up to 20 absent days every 6 months. Additionally, Ohio tracks data on both authorization and utilization. Monthly, between 15 percent to 30 percent of the children authorized to attend a program never utilize a single day. To safeguard payment for no service Ohio utilizes attendance tracking prior to payment but allows for holidays and absent days to count toward the payment category. This practice is currently under further review to ensure alignment with the new federal rules. The Department of Children and Youth (DCY) will be analyzing the fiscal impact for all of the federal child care payment rules that became effective in April 2024. DCY will plan to request a 2-year waiver while legislative and rule changes are identified and funding estimates are completed. The State's biennial budget process will begin in the fall of 2024, with the Governor preparing |
| Tennessee | Region IV | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Texas | Region VI | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Utah | Region VIII | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Virgin Islands | Region II | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| West Virginia | Region III | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Wisconsin | Region V | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Wyoming | Region VIII | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Oregon | Region X | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | based payment in January 2023, when a policy change was made to approve families for either a part-time or full-time child care authorization for their eligibility period. This also expanded allowable uses of child care during the certification period, delinking initially qualifying activities from families' use of child care throughout the 12-month certification period.<br><br>Despite these advancements, however, limitations to Oregon's current provider payment system do not allow for full enrollment-based payment as providers still have to bill on a monthly basis for scheduled hours of care/enrollment status. This is an area that the state is working to resolve through the development of a new provider management platform. The current provider pay system will pay providers based on the hours they report providing care, not on a full-time or part-time slot. Providers may still be paid the full-time amount if they bill over 136 hours per month |
| Puerto Rico | Region II | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Lead Agency requires that a child must have at least 80% attendance for the provider to receive full payment. In cases of justifiable reasons such as child or caregiver illness, vacations, medical appointment s or treatments, disasters, or public health emergencies, the situation is evaluated on a case-by-case basis. If | | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Vermont | Region I | Amendment #3 | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | paid on the weekly amount approved by either attendance of the child or a code to represent the reason for the absence. Coded days include provider closed days, thirty (30) per child per state fiscal year, and child absence days, which are also set at thirty (30) per child per state fiscal year. This process | | |
| Virginia | Region III | Amendment #1 | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Department pays vendors for up to 60 absent days per-child, per-fiscal year (June 1- May 31). This threshold was identified based on a review of data and reflects the number of absence days that is sufficient to cover the vast majority of absence events among children in the CCSP in an effort to move toward a full pay-by-enrollment model. The Agency will make strides toward payment by enrollment, as required by provision § 98.45(m)(2) in the CCDF Final Rule. In June 2024, VDOE requested a waiver to comply with the requirement to pay by enrollment. This will give the agency time to revise its policies, processes, and technology to comply with the requirement while maintaining strong internal controls and review procedures. |
| | | | | | | | for subsidy attends at least one day in the calendar month within an authorization period, the provider is eligible to claim absent days that month. Absent days are days that a child was scheduled to attend and was absent. This is based on the schedule the parent has with the provider and not on what schedule DCYF has in its system. Providers may not claim for payment for more days than authorized for that month. Licensed family home providers are authorized a monthly unit which providers may claim when the child attends care during the month. |
| Washington | Region X | Initial Submission | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Payment practices for non-relative, in-home and relative (FFN) care are by hour. No absent days or hours are allowed for FFN care as payment based on enrollment is not a generally-accepted practice for this type of care -- most FFN providers are relatives who do not collect payment when care is not provided, and in cases and the generally accepted payment practice for this |

Content Report For 4.4.1a. Prospective payments to all provider types
Fiscal Year: FY 2025-2027 *9 Lead Agencies Compliant
Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | Yes. If yes, describe: | Describe: | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Describe: |
|---|---|---|---|---|---|---|
| Alabama | Region IV | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The lead agency has not adopted paying providers prospectively. The lead agency has submitted for a waiver to request time to implement the new policy based on the Final Rule of 2024. |
| Alaska | Region X | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | AK is not meeting the prospective payments requirement and will be submitting a waiver request for this requirement. |
| American Samoa | Region IX | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | It is not a generally-accepted payment practice for types of child care providers in American Samoa (centers, family child care home, in-home), all of whom came into existence for and continue to be wholly funded through CCDF subsidies.<br>It should be noted that the CCDF created the market and continues to solely sustain it. The payment practices established and implemented by the Lead Agency are the generally-accepted practices.<br>Also important is that based on the current generally accepted practices, all providers are paid within 21 business days from the date their invoice is approved for payment. On average, CCDF subsidy payments for authorized providers are issued via direct deposit within 14 business days. |
| Arizona | Region IX | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency is requesting a waiver to implement this provision of the New CCDF Final Rule. The Lead Agency anticipates completion of this provision by August 2026. |

| | | | | |
|---|---|---|---|---|
| Arkansas | Region VI | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | system that enables paying of providers based on enrollment. When this is accomplished, the long-term goal would be to pay providers prospectively. However, to accomplish this the technical systems for payment must be replaced with a system that is designed for the new purposes. The new system will enable Arkansas to update presumptive eligibility language, clarifying copay caps at 7% of family's gross income as applying per family regardless of the number of children participating in CCDF. The new system will continue to leverage eligibility from other public assistance programs and seek to include additional systems such as Head Start, Early Head Start, etc. particularly for vulnerable populations. This work will be done within the next year but not before the October 1, 2024, implementation plan. In addition to changes in payments to providers, the Office of Early Childhood will engage in intentional supply-building by |
| California | Region IX | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | transitional and legislative two-year waiver effective no longer than August 1, 2024 through August 1, 2026, to implement the practice of paying prospectively. California will initiate this during the 2025-26 legislative and budget processes. Currently our payment practices are authorized in Senate Bill 140 which added Welfare and Institution Code section 10277, requiring all of the following effective March 1, 2024: 1. For providers accepting subsidy vouchers, child care reimbursement shall be made within 21 calendar days of the submission of a complete monthly attendance record or invoice, and for providers participating in a family child care home education network, reimbursement shall be made within 21 calendar days of the submission of a daily sign-in and sign-out sheet; 2. A schedule for the payment of services that must be signed by the child care provider; 3. A provision requiring that if a provider submits attendance records or invoices for |
| Delaware | Region III | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The lead agency will be requesting a waiver as additional time will be needed to comply with this requirement. |
| District of Columbia | Region III | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The District is not in compliance with the requirement to pay all provider types prospectively and has submitted a request for a temporary waiver of compliance with this requirement. |

| | | | | |
|---|---|---|---|---|
| Colorado | Region VIII | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | CDEC does not currently pay any providers prospectively. CDEC is requesting a waiver to pay all providers prospectively by August 1, 2026. CDEC does not have data demonstrating that it is not a generally-accepted payment practice. CDEC currently pays all provider types every week for the care period two weeks prior. CDEC program rules will be revised effective August 1, 2026 to pay all providers prospectively through the rule-making process that engages counties, child care providers, and family advocacy groups. The rule-making process will take place to change rule to pay based on enrollment for all ages with full implementation by August 1, 2026. |
| Connecticut | Region I | Amendment #2 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | controls and fraud detection have been established on Provider Invoicing that requires provider to confirm care of child and dates of leave from services. This helps assure that program payments are for services rendered and limit the efforts for an number of recoupment of overpaid funds. Ther are statutory limits on the amount of payments that can be recouped at one time and lends itself to having fund repayment extend over several quarters and multiple fiscal years. Some of these funds go directly into the State collection and are cannot be redirected into the exact program or service, depending on circumstance for recoupment. In addition, if a provider is no longer serving children in Care 4 Kids, the recoupment of overpaid funds will be difficult. This may especially be true for Relative Care where the turn-over of provider is based on their relative child needing care and ends with that child or family's need for care. A process has not been established for a |
| Florida | Region IV | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | DEL currently requires in the annual grant agreement all ELCs and RCMA to pay child care providers within no more than 21 calendars days for services rendered during the prior month. The DEL will work to amend Rule 6M-4.500, F.A.C. and other applicable policies to align with the new final rule and pay based on enrollment. |
| Georgia | Region IV | Amendment #2 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency cannot currently pay prospectively and has submitted a waiver per Office of Child Care guidance. The Lead Agency has requested a waiver through August 1, 2026, and intends to use the time allowed to develop and implement the necessary policies and procedures to be compliant. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Guam | Region IX | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | For all provider types, after review of the certificate, child care calendar and any other supporting documents (e.g. doctor's excuse note, etc.), payment is processed within 21 calendar days due to challenges associated with being a line agency. The Guam Department of Public Health and Social Services must adhere to the Guam Procurement Law and work with other government agencies. |
| Hawaii | Region IX | Initial Submission | Yes. If yes, describe: | Once determined eligible and initial payments have been issued, the Department of Human Services pays the child care subsidy payments prospectively to the family at the start of the month for that month's child care needs. | | |
| Illinois | Region V | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Illinois is not currently paying providers prospectively. A 2-year waiver request will be submitted. |
| Iowa | Region VII | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency acknowledges the CCDF regulations regarding prospective payment changed effective 4/30/2024. The Lead Agency's current IT system that handles provider payments does not have the capability to pay prospectively and the Lead Agency is exploring new IT solutions to meet this requirement. The Lead Agency intends to submit a waiver request to come into compliance on this provision. |
| Kansas | Region VII | Amendment #2 | Yes. If yes, describe: | After initial approval, authorized benefits are paid on a prospective basis, available at 6:00 am on the first day of the month. The family can then transfer benefits at any time during the month to make payment to their provider. | | |
| Kentucky | Region IV | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | All CCAP participating providers are paid the month after services are provided. Care provided in June will be reimbursed beginning July 1, 2024.<br><br>We are currently researching the change requirements of paying prospectively for our state with plans to move forward during the current state plan cycle. |
| Idaho | Region X | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Payments are issued directly to eligible providers via check or direct deposit on the second business day of the month following the month when care was provided. For example, payment for care provided in September would be made on the second business day of October. Idaho is developing a plan for prospective payments in alignment with the 2024 CCDF Rules. Idaho intends to apply for a transitional waiver while we work to implement prospective payments. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Indiana | Region VI | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Payments are made to all providers bi-weekly, through direct deposit into the provider's bank account within 14 days of the end of the pay period. The Lead Agency contracts with Rapid Financial Services to make payments every 2 weeks based on enrollment and allows for a child's occasional absence (not to exceed 45 days per year). 94% of licensed child care centers and child care homes participate in the CCDF program. Neither families nor providers have indicated through surveys or the review of the state plan that this policy prevents them from supporting children.<br><br>The Lead Agency will be seeking a waiver to allow time for the system changes needed to pay prospectively. |
| Louisiana | Region VI | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | At this time the Lead Agency is requesting a temporary waiver for meeting this provision, as the Department works to update systems and processes. Currently all system-automated weekly payments, which are the vast majority of payments, are made within 14 days of services. |
| Maine | Region I | Amendment #3 | Yes. If yes, describe: | Payment is issued on a lead agency approved biweekly billing cycle for the two weeks of service following the payment date. Providers verify current enrollment in our online management system (Baxter) ahead of that prospective billing cycle and are paid after that enrollment verification for the upcoming two weeks of service. | | |
| Maryland | Region III | Amendment #1 | Yes. If yes, describe: | implemented advance payment as a strategy to increase the supply of and improve the quality of child care service across the seven (7) payment regions in Maryland. Advance Payment pays providers based on the number of children enrolled in the Child Care Scholarship (CCS) Program during the prior month. This payment strategy projects the amount owed to the provider for the month and divides it into two payments processed on the 1st and 15th of each month. Paying providers in advance provides greater financial resources to providers at the beginning and in the middle of the month versus paying providers in arrears for services already rendered. Maryland believes that the Advance Payment model combined with child care scholarship reimbursement rates at the 70th percentile across Maryland will increase equal access to higher child care options for children eligible for CCS services. In addition, the major rationale for implementing advance payment was to increase equal access to child care by creating a payment | | |

| | | | | |
|---|---|---|---|---|
| Massachusetts | Region I | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | and schedules payments within 3 to 10 business days of receipt of any request for reimbursement. Once scheduled in the Commonwealth's accounting system, payments are processed overnight and disbursed the next day. All payments by EEC are made by electronic fund transfer to contract providers and Child Care Resource and Referral agencies. Contract providers invoice EEC directly while voucher providers submit their billing to their assigned Child Care Resource and Referral agency. Child Care Resource and Referral agencies aggregate their billing and submit to EEC twice a month to ensure payment to voucher providers within 21 days of receiving an invoice (this was recently implemented in FY24). All Child Care Resource and Referral agencies are contractually obligated to offer electronic fund transfer to voucher providers, although voucher providers may still elect to be paid by check if preferred. EEC is requesting a waiver for prospective payments |
| Mississippi | Region IV | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | A completed invoice for services to CCPP are submitted though an electronic ledger. All providers submit their ledger by the 5th or the 15th of each month. Payments are received by the provider no more than 21 days of receipt of the completed claims form or ledger. |
| New Hampshire | Region I | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | NH will be requesting a waiver in order to implement prospective payments. Providers are required to bill DHHS weekly and payments are issued two times each week. For invoices submitted by Wednesday, payment is issued by that Friday, and for invoices submitted by Friday, payment is issued by the following Tuesday. Direct deposit is also available to providers. Direct deposit is not required but suggested. |
| New Jersey | Region II | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Providers are not paid prospectively. DHS/DFD utilizes an automated time and attendance system which calculates attendance utilization and issues ACH payments to providers bi-weekly. DHS/DFD is seeking a waiver to meet 2024 CCDF Final Rule. |
| Michigan | Region V | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Child care providers bill electronically after care has been provided on a bi-weekly basis. There is a published deadline, which is a few days after the pay period ends. If the billing is done by the billing deadline, payment is generated within eight to ten days. If billing is done after the deadline, but before 90 days, payment is generated within eight to ten days of the billing. Payroll is processed on a weekly basis to ensure providers are paid in a timely manner. Michigan will be requesting a two year waiver in order to implement this provision. |

| | | | | |
|---|---|---|---|---|
| Minnesota | Region V | Amendment #2 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Agencies administering child care assistance must make payment no later than 21 days after receipt of a complete bill from a child care provider. Local agencies receive and process submitted bills for payment using either paper vouchers or the online billing system and must determine their internal procedures to ensure bills are paid no later than 21 days after a complete bill is received.<br><br>Lead Agency payment policy is shared with local agencies in Chapter 9.3 (Payments to Providers) of the CCAP Manual. Link: https://www.dhs.state.mn.us/main/idcplg?IdcService=GET_DYNAMIC_CONVERSION&RevisionSelectionMethod=LatestReleased&dDocName=ccap_0903<br><br>Yes, MN will submit a waiver. |
| Missouri | Region VII | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | providers the month after child care services are delivered. The Lead Agency ensures providers have a current written agreement (i.e., contract) and a valid authorization for child care assistance, prior to receiving funds. Once a provider submits a complete request for payment (e.g., attendance record), the request is processed within three business days and payment is generated to the provider's banking institution on file within 7-10 business days. The Lead Agency has not conducted prospective payments to date; therefore, the Lead Agency will need to establish policies and procedures for implementing prospective payments in the future. To establish a definition of prospective payments, the Lead Agency will form a stakeholder group, including child care providers, advocacy organizations, and financial/budget staff, to discuss and provide a recommendation for prospective payments. The Lead Agency will also need to determine |
| Montana | Region VIII | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | 2024 CCDF rules requires prospective payment for direct services for children participating in CCDF. The Lead Agency has requested a waiver request to meet this requirement and will be seeking technical assistance on maximize the efficient use to meet the needs of the early childhood system. Currently, the Lead Agency pays within 21 calendar days of the receipt of a complete invoice for services. Once a child care provider submits an invoice, the invoice is processed within three business days. Payments are made twice per week. After a payment, providers receive a Statement of Payment (SOP) and families receive an Explanation of Benefits (EOB) explaining what was paid for a child's care. The Lead Agency will implement a new database in 2025 and plans to incorporate prospective payment functionality. Additionally, the Lead Agency must adopt new policies to change payment methodology, and this will require public comment |

| | | | | | | |
|---|---|---|---|---|---|---|
| New Mexico | Region VI | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | ECECD pays child care providers on a monthly basis. Payments reflect a month of service provision and are paid no later than the fifth day of the following month in which the services was rendered. ECECD also performs a weekly pay run to capture any payments that were not paid in the monthly payment run.<br><br>New Mexico is planning to submit a waiver for prospective payments. |
| North Carolina | Region IV | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Providers receive payment between the 15th and the 20th of the month following service provision via direct deposit. The Lead Agency recognizes that this is not compliant with current CCDF requirements and needs additional time to make functionality changes in NC FAST to fully implement prospective payments. |
| North Dakota | Region VIII | Amendment #1 | Yes. If yes, describe: | The Lead Agency allows child care providers to certify for payment beginning on the 20th of the prior month. All payments certified prior to the 2nd to last working day of the month are processed that night to allow for payments to be received by child care providers on the first of the month. | | |
| Northern Mariana Islands | Region IX | Initial Submission | Yes. If yes, describe: | The CCDF Lead Agency pays prospectively. For example: for the month of July's services, providers will be paid no later than July 5. | | |
| Pennsylvania | Region III | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Pennsylvania does not pay any provider prospectively. Child care providers submit invoices to the ELRC for the service month by the fifth of the following month. The ELRC ensures payment to child care providers by the 20th of the month. Pennsylvania is applying for a waiver to meet to meet the requirement of paying providers prospectively. The waiver is needed to provide time to make system changes and create new protocols. |
| Nebraska | Region VII | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Generally, providers will receive a payment within 5 days of billing for services. Providers typically bill on the 15th and last day of the month for services provided during that month. Some providers elect to bill monthly. The Lead Agency currently lacks data indicating that paying prospectively is not a generally accepted practice for payment. The Lead Agency will request a waiver to obtain technical assistance on how to implement this requirement. |
| Nevada | Region IX | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Current payment practices are to pay providers following services to ensure accurate payment to providers. This is appropriate because:<br>1. Some children attend multiple providers requiring the Lead Agency to verify attendance for both providers to make proper payment to the correct one for each day of care.<br>2. This ensures there is not an overpayment to a provider when parents transfer providers during the reimbursement period.<br>3. This allows the Lead Agency to receive a timesheet signed by the parent and provider verifying care was used during the reimbursement period. |

| | | | | |
|---|---|---|---|---|
| New York | Region II | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | locally administered system, each LDSS sets their payment practices by their local code and regulations, including how providers contract with the LDSS and the payment schedule. Each LDSS has to establish each provider accepting CCAP as a vendor and the associated terms of payment within the local government, such as whether providers are paid every two weeks/monthly or another schedule. LDSSs are allowed to pay prior to the delivery of services but are not required to do so. LDSSs are required by regulation to allow, disallow, or defer a claim for child care services within 21 days from the date the claim is received. The Child Care Time and Attendance system (CCTA) has been implemented in all LDSSs outside of NYC. A child's attendance can be submitted electronically to the LDSS, and then CCTA calculates payments and uploads these payments to the statewide payment system. The 21-day requirement and electronic time and attendance tracking have resulted in more timely |
| Ohio | Region VI | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | they determine, up to 4 weeks after service. A child is authorized to a provider and attendance is tracked. Upon the provider submitting the attendance the payment will be issued. Ohio provides weekly payments if the business elects to submit attendance at that rate. Ohio tracks data on both authorization and utilization. Monthly, between 15 percent to 30 percent of the children authorized to attend a program never utilize a single day. To safeguard payment for no service Ohio utilizes attendance tracking prior to payment but allows for holidays and absent days to count toward the payment category. This applies to all provider types.<br><br>The Department of Children and Youth (DCY) will be analyzing the fiscal impact for all of the federal child care payment rules that became effective in April 2024. DCY will plan to request a 2-year waiver while legislative and rule changes are identified and funding estimates are |
| Rhode Island | Region I | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency is updating payment practices to reflect prospective payment during the waiver period provided by ACF to come into compliance with this requirement. |
| South Dakota | Region VIII | Amendment #2 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | We are currently implementing a planned system replacement for the Child Care Subsidy program with completion during the 2025-2027 State Plan timeframe. Once completed, we will begin paying providers prospectively.<br><br>South Dakota will be requesting a waiver to allow time for the implementation of prospective payments. |

| | | | | |
|---|---|---|---|---|
| Tennessee | Region IV | Initial Submission | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | As The Lead Agency does not pay providers prospectively for any child care provider; instead, as a best practice, the Lead Agency seeks to issue payment within ten (10) business days. The Lead Agency has requested a waiver regarding this provision. |
| Oklahoma | Region VI | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency reimburses providers based on attendance 2 weeks in arrears. The Lead Agency does not meet this provision of the final rule and will file a waiver. The Lead Agency received a preliminary finding of non-compliance with Payment Practices to Providers. The Lead Agency does not pay a provider within no more than 21- calendar days of receiving a complete invoice for services. The Lead Agency will implement Oklahoma Administrative Code changes and process changes with an anticipated effective date of August 2026. |
| Oregon | Region X | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency currently allows providers to bill via their child care billing form/voucher at the beginning of the month for the total number of hours a child is scheduled to be in care for the month with no limitation on absent days. Payment in advance of care is a generally accepted payment practice in Oregon, but due to limitations with the current provider pay system, the Lead Agency is unable to make payments to providers in advance of or at the beginning of the delivery of child care services. The general timeframe for processing billing forms is approximately 3-4 business days upon receipt of a completed child care billing form.<br><br>Oregon submitted a waiver for implementation of prospective payments on May 6, 2024. |
| Puerto Rico | Region II | Amendment #1 | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | monthly attendance sheets at the Child Care Program's regional offices. This document can be delivered by the provider or the parents in person at the office, by mail or by email. This form must be received no later than 5 business days for the payment to be processed within 21 calendar days. This attendance document is evaluated by the Eligibility Technician to make sure that the child has met at least an 80% attendance rate, or otherwise has a reason to justify the non-attendance. After evaluation, the technician enters the attendance into the electronic case management system for payment. On the sixth workday, the ACUDEN central Finance Office gathers all approved attendance information from the different regional offices and issues payment for the services to be deposited in or before 21 calendar days. This payment is made by electronic deposit into the provider's bank account. Currently, the Lead Agency provides prospective payment to |

| | | | | | | |
|---|---|---|---|---|---|---|
| South Carolina | Region IV | Amendment #1 | Yes. If yes, describe: | The process for prospective payments is from the date the Service Voucher Log (payment form) generates, any unpaid weeks up to the generation date is pulled plus the dates through the first Sunday following 28 calendar dates. The Lead Agency has a service period of one week, Monday to Sunday to pull full weeks at a time. The provider will certify that they anticipate the children on the SVL to be enrolled for the time period printed on the SVL. If the provider indicates any period of time that the children will not be enrolled, the system allows the provider to document the reason the child will no longer be enrolled and the last date of expected payment. When the payment for the prospective services have paid, the provider is given a validation notice to confirm that the payments were made correctly before the next SVL generates. | | |
| Texas | Region VI | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Currently, Boards reimburse all providers in their workforce area on a standard weekly, biweekly, or monthly schedule as determined by the Board. Payment to child care providers is based on the child care authorization that is in place for the child.<br><br>Effective December 9, 2024, TWC pays all regulated providers (not including relative care providers) prospectively every two weeks based on enrollment. While paying child care businesses prospectively is considered a generally accepted practice, this is not the case for relative care. |
| Utah | Region VIII | Initial Submission | Yes. If yes, describe: | When applications are approved, the payment is issued on the same day. Monthly, ongoing assistance is authorized two business days prior to the end of the month to allow financial institutions processing time for direct deposit. Payments are issued based on prospective eligibility for the upcoming month. More than 95 percent of all providers opt to receive payment by direct deposit. For providers who choose not to accept direct deposit, a check is issued prospectively and mailed to them. | | |
| Vermont | Region I | Amendment #3 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Child care providers can bill for the services provided every two weeks, with the payment happening within one week of billing. CDD will be seeking a waiver of the rule while working to come into compliance through updates and changes to the systems utilized to support payment practices in the state. |
| Virgin Islands | Region II | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Pay prospectively prior to the delivery of services not applicable in the Virgin Islands. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Virginia | Region III | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | All vendors in the Child Care Subsidy Program receive payment every two weeks by direct deposit through Conduent, a third-party vendor who acts as the State Provider Management Agent. Each month is divided into two service periods, the 1st through the 15th and the 16th through the 30th or 31st. Payment deposit dates are generally two three weeks following the end of the service period. A Payment Schedule is posted on Virginia's website (www.childcare.virginia.gov). The Agency will make strides toward prospective payment, as required by provision § 98.45(m)(1) to pay providers prospectively in the CCDF Final Rule. The Lead Agency requested a legislative and transitional waiver in June 2024 to provide more time for implementation, due to state policy and technology constraints. |
| Washington | Region X | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Prospective payment is a generally-accepted payment practice in licensed child care. However, in order for DCYF to pay prospectively in the CCDF subsidy program, the Legislature's approval and budget is required. The 2025 legislative session is the next opportunity for this to occur. Payment practices for non-relative, in-home and relative care (FFN) are by hour and after services are provided. Further, payment practices for FFN providers are bargained with SEIU 925. Also, FFN providers are typically relatives and do not collect payment when care is not provided. DCYF intends to apply for a waiver for this provision. |
| West Virginia | Region III | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The current data system is not programmed for prospective payments. The lead agency is requesting a waiver to comply with this requirement. |
| Wisconsin | Region V | Initial Submission | Yes. If yes, describe: | The Lead Agency ensures a full month's subsidy benefit amount is made available through the parent's EBT card at the beginning of each month. A provider will enter into a written payment agreement with each parent that receives a child care subsidy. Parents are responsible for determining when the payment is transferred to the child care provider's account. | | |
| Wyoming | Region VIII | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Department is currently researching and exploring how to implement this requirement and will be submitting a waiver request. The Department will conduct research, review data and develop a plan to implement paying all provider types prospectively. Federal Technical Assistance may be required for successful implementation of this requirement. |

# Content Report For 3.1.1a. Maximum percent of family's gross income charged as a co-payment

## Fiscal Year: FY 2025-2027
## Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | What is the maximum percent of a family's gross income any family could be charged as a co-payment? |
|---|---|---|---|
| Alabama | Southeast | Amendment #3 | The lead agency currently sets the max of 7% based on the family's gross income. The copayment amount is per child which may result in the total amount of the copayment for the family to exceed 7%. The lead agency has submitted a waiver for the requirement to be met after the start of the state plan cycle. |
| Alaska | Northwest | Initial Submission | The maximum a family currently pays is 9% of their gross monthly income. The Child Care Program Office will be submitting a waiver to allow the time needed to change policies, procedures, any applicable regulations, and update data systems to come into compliance with the 7% threshold. |
| American Samoa | Southwest | Amendment #1 | The Lead Agency received a non-compliance notice on December 13, 2021, due to the absence of a co-payment system in American Samoa. The agency will collaborate with the Regional Technical Assistance Team to develop a co-payment plan and will require extra time to ensure this requirement is met. |
| Arizona | Southwest | Amendment #2 | 1.7 percent |
| Arkansas | Southwest | Amendment #2 | Arkansas does not establish a maximum percentage of a family's gross income for co-payment amounts. |
| California | Southwest | Amendment #2 | 1% |
| Colorado | Northwest | Initial Submission | Copays (parent fees) are currently capped at 10% of a family's income. Colorado will be adjusting our parent fee formula to ensure that the fee does not exceed 7% of the family's income by April 1, 2026, which will allow time for the appropriate technology changes to be completed to meet full implementation by August 1, 2026. |
| Connecticut | Northeast | Amendment #2 | 7% dependent on household size and income. |
| Delaware | Northeast | Initial Submission | 7 |
| District of Columbia | Northeast | Amendment #2 | 7 percent |
| Florida | Southeast | Initial Submission | Currently, DEL requires co-pays to be no more than 10% of a family's income. The DEL is working to establish co-payment policies for families receiving CCDF assistance to be no more than 7% of family income to help ensure family co-payments are not a barrier to accessing child care. |
| Georgia | Southeast | Amendment #2 | Family fees are based on a percentage of a family's annual gross applicable income and family size. The assessed fee is a family fee for all children in care, not a fee for each child. The maximum copay is always 7% and never goes above. Family fees are not assessed for child care services when one of the following applies: Children who are in Georgia's Division of Family and Children Services (DFCS) custody, a parent who is 17 years of age or younger at eligibility determination, and the family's gross applicable income is at or below 10% of the poverty guidelines. |
| Guam | Southwest | Amendment #1 | 1.7% |

| | | | |
|---|---|---|---|
| Hawaii | Southwest | Initial Submission | The Department of Human Services (DHS) is not compliant by 10/01/24 for section 98.20(a)(2)(i): 85 percent of the State's median income (SMI) based on most recent SMI data. Preliminary Notice of Possible Non-Compliance Rev. date: 01/2023. DHS will need additional time to fully implement the requirement. The maximum percent of a family's gross income is 9%. The Department of Human Services is in the process of amending the Hawaii Administrative Rules (HAR) Chapter 17-798.3 Child care Payments, for copayments at 7% of a family's gross income. The amendment package for Subsidy Rules is currently with the Attorney General for review. The eligibility chart in HAR, Chapter 17-798.3-9(b)(1) lists dollar amounts. The amendments will include language to refer to the most recent data rather than having actual dollar amounts. |
| Idaho | Northwest | Initial Submission | At this time, co-payments in Idaho are a flat rate assessed per child based on household size, household income, and qualifying activity hours. While Idaho looks forward to updating our copayment calculations there is not currently a maximum percentage of a family's gross income. |
| Illinois | Midwest | Amendment #2 | 7% |
| Indiana | Southwest | Amendment #3 | 26%. A waiver request will be submitted to allow time for eligibility systems to be changed to cap co-pays at 7%. |
| Iowa | Midwest | Amendment #1 | 6.5% |
| Kansas | Midwest | Amendment #3 | The maximum amount of a family share deduction assigned to a case is 5% of the family's countable gross income. |
| Kentucky | Southeast | Amendment #3 | Copayments have been waived for all families since 2021. The Lead Agency originally used CRRSA funds to waive copayments and when those funds expired we transitioned to using state funding. State funding will expire on September 30, 2024. Families will be expected to pay their copayments beginning on October 1, 2024. DCC anticipates the copayment will be capped at 7% of a family's monthly income due to upcoming changes that are in place. The Lead Agency will request a waiver if there are delays in implementing that change to the copayment chart. |
| Louisiana | Southwest | Amendment #1 | 5.25% |
| Maine | Northeast | Amendment #4 | The total amount of the Parent Fee assessed cannot exceed seven percent (7%) of the Family's Eligibility Income for families below 85% of State Median Income and cannot exceed ten percent (10%) of the Family's Eligibility Income for Families with Eligibility Income between 85% and 125% of State Median Income. These new parent fees (co-payments) went into effect May 19, 2025. However, since the parent fees are revised at redetermination it took until May 18, 2026, for all parent fees for families with income less than 85% SMI to be at or below 7%. |
| Maryland | Northeast | Amendment #1 | Maryland's assigned parental copayment is less than 1% of the families gross family income. |
| Massachusetts | Northeast | Amendment #2 | The most that any family can be charged for a copayment as a percentage of their income is 11.9%. This figure is based on a family of two that has recertified with a maximum income of $7,008 per month. EEC is requesting a waiver and will work to reduce the maximum percentage of a copayment to 7% or less of a family's gross income. |
| Michigan | Midwest | Amendment #2 | 5.23%. |
| Minnesota | Midwest | Amendment #2 | The maximum percent of a family's gross income paid by families is 14 percent at the exit income range at redetermination, which is 67 percent SMI. The percent paid reduces to 11 percent, during the 12-month eligibility period, for families with income above 67 percent SMI and below 85 percent SMI. Minnesota will be submitting a waiver for charging more than 7% of a family's gross income, regardless of the number of children participating in CCDF. |
| Mississippi | Southeast | Amendment #2 | Up to 50% of SMI, copayment is capped at 5.5% of gross income; Up to 85% of SMI, copayment is capped at 6.5% of gross income. |
| Missouri | Midwest | Amendment #2 | The current maximum co-payment is 6.3% per child. The Lead Agency will submit a waiver request for additional time to implement this provision. |
| Montana | Northwest | Amendment #1 | The maximum percentage is set at seven percent. |

| | | | |
|---|---|---|---|
| Nebraska | Midwest | Initial Submission | 7% |
| Nevada | Southwest | Amendment #1 | 7% |
| New Hampshire | Northeast | Amendment #1 | The maximum percent of a family's gross income is 7% |
| New Jersey | Southeast | Initial Submission | 5% |
| New Mexico | Southwest | Amendment #1 | The maximum percent of a family's gross income any family can be charged is 1.5 percent. |
| New York | Southeast | Amendment #1 | For those families that are required to pay a family share, the family fee for child care assistance will be calculated as one percent of the family's income that exceeds the state income standard, which is 100% of the federal poverty level. The maximum percent of a family's gross income that any family could be charged as a copayment is 0.74%. There is a nominal, minimum family fee of $1 per week for all families that are required to pay a family share. |
| North Carolina | Southeast | Amendment #2 | 10% DCDEE recognizes that 10% is not compliant with CCDF requirements. DCDEE needs additional time to request legislative authority and to make functionality adjustments within NC FAST to fully implement this change. |
| North Dakota | Northwest | Amendment #2 | 6% |
| Northern Mariana Islands | Southwest | Initial Submission | Not more than 1% |
| Ohio | Southwest | Amendment #2 | The family copayment is calculated on a sliding fee scale. Families below 100 percent of the federal poverty level (FPL) have no copayment. Families between 101 percent to 200 percent increase from 7 percent of their income to 8.75 percent of their income. After 200 percent of the FPL, the copayment increases more dramatically, capping out at 27 percent of income for 295 percent and 300 percent of the FPL. The Department of Children and Youth (DCY) will be analyzing the fiscal impact for all of the federal child care payment rules that became effective in April 2024. DCY will plan to request a 2-year waiver while legislative and rule changes are identified and funding estimates are completed. The State's biennial budget process will begin in the fall of 2024, with the Governor preparing his proposed operating budget for the legislature by early 2025. The final statute and funding will not be known until July 1, 2025. Ohio will then begin implementing the policies that were modified and funded through the state budget process. DCY will submit a waiver by October 1, 2024 for the co-payment rule. |
| Oklahoma | Southwest | Amendment #1 | 7 |
| Oregon | Northwest | Amendment #1 | Oregon passed legislation in 2021 through House Bill 3073 which limited copays to no more than 7% of a family's income. |
| Pennsylvania | Northeast | Amendment #1 | Effective May 5, 2025, a family's co-payment will not exceed 7% of the family income. Pennsylvania will no longer have a $5 minimum co-payment. |
| Puerto Rico | Southeast | Amendment #1 | The maximum copayment percentage for a family is 2.0% of gross income. |
| Rhode Island | Northeast | Initial Submission | 7% |
| South Carolina | Southeast | Amendment #1 | 2% |
| South Dakota | Northwest | Amendment #3 | Under initial tier eligibility copayments do not exceed 1% of Household income. Families' copayments are capped at less than 2%of household income while eligible for the 12-month graduated phase out. |

| | | | |
|---|---|---|---|
| Tennessee | Southeast | Initial Submission | Five (5) percent. |
| Texas | Southwest | Amendment #1 | TWC adopted a new policy on July 9, 2024, that caps co-payments at 7 percent of a family's gross income for children in care. TWC implemented the new copayment methodology with the launch of TX3C on January 13, 2025. This policy change will both be rolled out incrementally as families are recertified, and TWC will therefore request a temporary waiver of this federal requirement. TWC was granted extension of this prior approved waiver for January 14, 2026 to August 1, 2026. |
| Utah | Northwest | Initial Submission | 7 percent |
| Vermont | Northeast | Amendment #4 | The maximum percent is 13.9% up to Vermont's 575% FPL. |
| Virgin Islands | Southeast | Amendment #1 | Although subsidized Providers rarely charge families their co-payment. The co-pay is based on a weekly income rate and family size, and there is no co-payment required for educational training for very low income families. The maximum percentage of family gross income is 2%. |
| Virginia | Northeast | Amendment #1 | 5% |
| Washington | Northwest | Amendment #1 | 7 |
| West Virginia | Northeast | Initial Submission | 7% |
| Wisconsin | Midwest | Initial Submission | Previous Wisconsin State Statues required the Lead Agency to charge a family a up to 31% of their family income. Beginning 7/1/2024, the Lead Agency will charge many families no more than 7% of their income, however, families nearing 85% SMI may see a copay maximum amount of 12% of their family income under the new Wisconsin Statute signed into law in 2023. Additionally, as of 6/30/24 the Lead Agency has submitted an implementation waiver to allow the legislative efforts that will be necessary to comply with the 2024 OCC Rule requiring copays do not exceed 7% gross income for all families receiving Wisconsin Shares subsidy payments. |
| Wyoming | Northwest | Amendment #1 | Wyoming has found that families of 1 at income step(s) 5 and 6 and families of 2 at income step 6 on the sliding fee scale effective 4/01/25 exceed the 7% copay cap that is required per the 2024 CCDF Rule. The Department has identified the families who will be impacted and believes, while the number is small, further analysis on the potential impacts is needed. As such, Wyoming has requested a retroactive transitional and legislative waiver for this requirement for the period from April 1, 2025, through August 1, 2028. |

# Content Report For 4.4.1b. Provider payment based on authorized enrollment

## Fiscal Year: FY 2025-2027
## Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Describe: | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Describe: |
|---|---|---|---|---|---|---|---|---|
| Alabama | Southeast | Amendment #3 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Alaska | Northwest | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is | AK is not meeting the requirement to pay based on authorized enrollment and |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | will be submitting a waiver request for this requirement. |
| American Samoa | Southwest | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Arizona | Southwest | Amendment #2 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment | The Lead Agency is requesting a waiver to implement this provision of the New CCDF Final Rule. The Lead Agency anticipates completion of this provision by August 2026. | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | policy accounts for fixed costs: | | | |
| Arkansas | Southwest | Amendment #2 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Arkansas is seeking to move toward a system that enables paying of providers based on enrollment. When this is accomplished, the long-term goal would be to pay providers prospectively. However, to accomplish this the technical systems for payment must be replaced with a system that is designed for the new purposes. The new system will enable Arkansas to update presumptive eligibility language, clarifying copay caps at 7% of family's gross income as applying per family regardless of the number of children participating in CCDF. The new system will continue to leverage eligibility from other public assistance programs and seek to include additional systems such as Head Start, Early Head Start, etc. particularly for vulnerable populations. This work will be done within the next year but not before the October 1, 2024, | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | implementation plan. In addition to changes in payments to providers, the Office of Early Childhood will engage in intentional supply-building by establishing strategic pilot programs designed to provide greater access while informing leadership of lessons learned from local implementation. Addressing provider shortages by utilizing new funding mechanisms and technology solutions to support the opening and expansion of quality care facilities statewide will also be included in strategic planning. | | |
| California | Southwest | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Colorado | Northwest | Initial Submission | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not | CDEC pays all licensed providers for authorized enrollment for children ages 0-36 months. CDEC program rules will be revised | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | effective April 1, 2026 through the rule-making process that engages counties, child care providers, and family advocacy groups to pay based on enrollment for all ages which will allow time for the appropriate technology changes to be completed with full implementation by August 1, 2026. | | |
| Connecticut | Northeast | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Delaware | Northeast | Initial Submission | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment | The lead agency will be requesting a waiver as additional time will be needed to comply with this requirement. | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | policy accounts for fixed costs: | | | |
| District of Columbia | Northeast | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Georgia | Southeast | Amendment #2 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Lead Agency cannot currently pay based on authorized enrollment and has submitted a waiver per Office of Child Care guidance. The Lead Agency has requested a waiver through August 1, 2026, and intends to use the time allowed to develop and implement the necessary policies and procedures to be compliant. |
| Guam | Southwest | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | absences a child has. | | | | | |
| Hawaii | Southwest | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Indiana | Southwest | Amendment #3 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Iowa | Midwest | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Lead Agency acknowledges the CCDF regulations regarding payment based on enrollment changed effective 4/30/2024. The Lead Agency's current IT system that handles provider payments does not have the capability to pay based on enrollment and the Lead Agency is exploring new IT solutions to meet this requirement. The Lead Agency intends |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | to submit a waiver request to come into compliance on this provision. |
| Kansas | Midwest | Amendment #3 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| Kentucky | Southeast | Amendment #3 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| Florida | Southeast | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and | State supports fixed costs of providing child care services by requiring the ELCs to reimburse the provider based on the child's authorized hours of care needed, either part-time or full-time. For a child who is authorized only full-time care an ELC shall not recoup or adjust a provider's reimbursement for days a child attends part-time. The ELC shall not |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | thereby accounts for fixed costs: | reduce authorized hours of care prior to redetermination unless the parent requests a reduction in the authorized hours of care based on hours of care needed (Rule 6M-4.500, F.A.C.). The State currently supports fixed costs of providing child care service' by delinking provider payments from a child's occasional absences and providing full payment if a child is absent for up to a certain number of days in a month. In accordance with Rule 6M-4.500(4), F.A.C., reimbursement shall be authorized for no more than three absences per calendar month per child except in the event of extraordinary circumstances, in which case the coalition or its designee shall document approval for payment based on written documentation provided by the parent justifying the excessive absence for up to an additional 10 days. |
| Idaho | Northwest | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is | Idaho requires that rates charged by the child care provider must not exceed the |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | usual and customary rates charged for child care to persons not entitled to receive benefits under ICCP. If a child care provider's established rates are not altered based on a child's attendance the subsidy payment is not altered. Idaho intends to apply for a transitional waiver as we develop additional strategies to pay by authorized enrollment not linked to a child's number of absences. |
| Illinois | Midwest | Amendment #2 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Illinois pays provider for 100% of the child's eligible days if they attended at least 70% of those days. To lessen the financial impact of extraordinary events which are beyond the control of child care providers, a center experiencing less than 50% of their expected CCAP enrollment due to an extraordinary event (epidemic, flooding, heat failure…) may apply for a Child Care Assistance Program (CCAP) Attendance Exemption. Illinois will be requesting a waiver to delay |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | implementation of this requirements until policies, rules and systems are modified and a budget impact analyses is completed. Illinois was notified of non-compliance of with 45 CFR 98.45(l)(2) in January 2023. The former lead agency required additional time to make payment system modifications to calculate the 70% attendance rule on a child-by-child basis. Due to the age of the current system, this may not be possible until the planned replacement of that system. |
| Louisiana | Southwest | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Maine | Northeast | Amendment #4 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | attendance or the number of absences a child has. | | | | | |
| Maryland | Northeast | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Massachusetts | Northeast | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Michigan | Midwest | Amendment #2 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and | License exempt (related and unrelated) child care providers are not paid by enrollment. Providers can bill for care provided up to the maximum number of bi-weekly hours approved for the child. Hourly rates are set and determined through the legislative budget process based on available funding. Each child is allotted 360 absence |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | thereby accounts for fixed costs: | hours to be paid/used during the fiscal year. Due to a previous IRS audit payments to license exempt providers are made directly to the parent who must pay the provider. Michigan does not currently include/collect data on license exempt providers through the Market Rate Survey but gathers information from license exempt providers through stakeholders who conduct the onsite health and safety visit and provide training. The number of license exempt providers has increased 78% since 2021 indicating this method is supporting the stability of this choice. |
| Mississippi | Southeast | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| New Hampshire | Northeast | Amendment #1 | Yes. The Lead Agency pays all providers | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| New Jersey | Southeast | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| New Mexico | Southwest | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| North Dakota | Northwest | Amendment #2 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Northern Mariana Islands | Southwest | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| Oklahoma | Southwest | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | The Lead agency reimburses providers based on attendance with some absent days. The Lead Agency does not meet this provision of the final rule and will file a waiver. | | |
| Minnesota | Midwest | Amendment #2 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted | Child care assistance pays for a child's scheduled and authorized hours of attendance, not actual hours attended. If a child attends for any part of their authorized schedule, care is fully paid for that day with no restrictions. When a child is absent an | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | entire day they were scheduled and authorized to be in care, care can be paid up to 25 absent days per calendar year. More absent days can be paid due to medical conditions or illness of a parent or sibling living with the child care assistance (CCAP) family if documentation is submitted to the local agency. Minnesota does not currently pay legal nonlicensed providers for absent days but plans to propose legislation in the 2025 session that would pay legal nonlicensed providers for absent days. Date of preliminary notice issued by OCC: 4/2/2024 MN affirms that Lead Agency needs additional time to meet requirement. Description of current policy and the way it is out of compliance: Minnesota does not pay legal nonlicensed providers for days when the child is absent from care. Minnesota is not in compliance with requirements that delink | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | provider payments from occasional child absences for legal nonlicensed providers. | | |
| Missouri | Midwest | Amendment #2 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Currently, the Lead Agency pays providers based on a child's attendance in their child care program. The Lead Agency ensures providers have a current written agreement (i.e., contract) and a valid authorization for child care assistance, prior to receiving funds. The provider submits attendance for the child at the beginning of each month, for the prior service month. Once a provider submits the attendance record, the request is processed within three business days and payment is generated to the provider's banking institution on file within 7-10 business days. The Lead Agency previously conducted pay on authorized enrollment procedures as part of the child care Coronavirus Response and Relief Supplemental Act (CRRSA) grant funds and is able to estimate the | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | cost associated with paying on authorized enrollment instead of attendance. However, considering the current state appropriation, there are insufficient funds in state fiscal year 2025 to implement pay on authorized enrollment. The Lead Agency will submit a waiver request for additional time to implement paying providers by authorized enrollment. | | |
| Montana | Northwest | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | The Lead Agency does not pay prospectively. The Lead Agency will implement a new database in 2025 with plans to incorporate prospective payment functionality. The Lead Agency will enact new policies to change payment methodology. Currently, the Lead Agency reimburses for the full payment amount if the child attends at least one day in a month. A parent or referring agency determines a child's need for care up to 50 hours per week. Authorized child care can meet the child's need and does | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | not directly follow the parent's schedule. | | |
| Nebraska | Midwest | Initial Submission | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Lead Agency currently pays based on the child's attendance for all child care providers. Child care providers are allowed to bill up to 5 absent days per month per child. The Lead Agency will request a waiver from the Administration of Children and Families as they work to delink provider payments from occasional absences. The Lead Agency will request a waiver to obtain technical assistance on how to implement this requirement. |
| Nevada | Southwest | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | No provider types are paid by authorized enrollment at this time. All provider types are paid based on actual monthly attendance to conserve limited subsidy funds (i.e., providers are currently only reimbursed for days care is actually provided). When children do not attend multiple providers, the provider is paid the daily rate based on monthly attendance records and is not paid the daily rate for | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | days the child did not attend unless the parent uses a "discretionary day." Parents are permitted to use 21 "discretionary days" per calendar year (e.g., sick, vacation, school holiday, etc.). In cases where the child is enrolled with multiple providers, the care is paid based on actual attendance at each provider so as not to exceed the daily state max rate (only one provider may be paid per day). | | |
| Pennsylvania | Northeast | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Pennsylvania does not pay any provider based on authorized enrollments. Currently, Pennsylvania makes payments to providers based on attendance. Pennsylvania is applying for a waiver to meet to meet the requirement of paying providers based on enrollment. The waiver is needed to provide time to make system changes and create new protocols. | | |
| Rhode Island | Northeast | Initial Submission | | No. | It is not a generally-accepted practice for each provider | The Lead Agency is updating payment practices to reflect | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | enrollment based payment during the waiver period provided by ACF to come into compliance with this requirement. | | |
| South Carolina | Southeast | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| South Dakota | Northwest | Amendment #3 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child's attendance or the number of absences a child has. | | | | | |
| New York | Southeast | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is | OCFS does not currently pay, based on authorized enrollment for any type of |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | child care provider. Such a practice is impracticable due to current technology systems. Additionally, OCFS will be seeking a waiver related to this provision and based on the determination to seek changes to statute and regulations. As an alternate approach, OCFS regulations require that LDSSs must pay for up to 80 absence days per child per provider per state fiscal year. The provider must be duly licensed, registered, or enrolled. If a child is provided care by multiple providers in one year, each provider is entitled to up to 80 absences, as needed. LDSSs may not stipulate payment for less than 80 absences in their contracts with providers. Additionally, LDSSs also pay for up to 20 days for program closures per year. Although OCFS intends to submit a waiver request to OCC for compliance with the new Federal Rule regarding implementing paying based on enrollment, |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | the current approach presents an alternative that provides an increased degree of stability for providers. |
| North Carolina | Southeast | Amendment #2 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Payment for subsidized child care services is typically based on enrollment but in some instances may be based on attendance. Payment based on attendance occurs when a child is absent for more than ten (10) days during a service month, when the provider charges only on the basis of attendance, and when the provider has an unpaid closure day. Providers record daily attendance in the NC FAST Provider Portal. This payment methodology encourages families to consistently use the authorized child care services and also reduces the risk of fraudulent behavior. The Lead Agency recognizes that this is not compliant with current CCDF requirements and needs additional time to change the policy and make functionality changes in NC FAST to fully implement provider |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | payments based on enrollment. The Lead Agency recognizes that this is not compliant with current CCDF requirements and needs additional time to change the policy and make functionality changes in NC FAST to fully implement provider payments based on enrollment. |
| Ohio | Southwest | Amendment #2 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Ohio currently pays based on attendance with the exception that each child is eligible for up to 20 absent days every 6 months. Additionally, Ohio tracks data on both authorization and utilization. Monthly, between 15 percent to 30 percent of the children authorized to attend a program never utilize a single day. To safeguard payment for no service Ohio utilizes attendance tracking prior to payment but allows for holidays and absent days to count toward the payment category. This practice is currently under further review to ensure alignment with the new federal rules. The Department of Children and |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | Youth (DCY) will be analyzing the fiscal impact for all of the federal child care payment rules that became effective in April 2024. DCY will plan to request a 2-year waiver while legislative and rule changes are identified and funding estimates are completed. The State's biennial budget process will begin in the fall of 2024, with the Governor preparing his proposed operating budget for the legislature by early 2025. The final statute and funding will not be known until July 1, 2025. Ohio will then begin implementing the policies that were modified and funded through the state budget process. Ohio is currently piloting payment on enrollment via the Child Care Choice Program. On April 26, 2024, the Child Care Choice Program was introduced. In his State of the State speech, Governor DeWine announced child care choice program, which will be paid upon enrollment. The goal of this pilot |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | is to expand an additional 8,000 vouchers to serve children from 146 percent of the federal poverty level (FPL) to 200 percent of the FPL. |
| Tennessee | Southeast | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| Texas | Southwest | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| Utah | Northwest | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Virgin Islands | Southeast | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| West Virginia | Northeast | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| Wisconsin | Midwest | Initial Submission | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s attendance or the number of absences a child has. | | | | | |
| Wyoming | Northwest | Amendment #1 | Yes. The Lead Agency pays all providers by authorized enrollment and payment is not altered based on a child’s | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | attendance or the number of absences a child has. | | | | | |
| Oregon | Northwest | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | Oregon moved toward enrollment-based payment in January 2023, when a policy change was made to approve families for either a part-time or full-time child care authorization for their eligibility period. This also expanded allowable uses of child care during the certification period, delinking initially qualifying activities from families' use of child care throughout the 12-month certification period. Despite these advancements, however, limitations to Oregon's current provider payment system do not allow for full enrollment-based payment as providers still have to bill on a monthly basis for scheduled hours of care/enrollment status. This is an area that the state is working to resolve through the development of a new provider management platform. The current provider pay |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | system will pay providers based on the hours they report providing care, not on a full-time or part-time slot. Providers may still be paid the full-time amount if they bill over 136 hours per month for their scheduled hours of care to be provided, which is considered full-time. Oregon submitted a waiver for implementation of full enrollment-based payment on May 6, 2024. |
| Puerto Rico | Southeast | Amendment #1 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment policy accounts for fixed costs: | Currently, the Lead Agency requires that a child must have at least 80% attendance for the provider to receive full payment. In cases of justifiable reasons such as child or caregiver illness, vacations, medical appointments or treatments, disasters, or public health emergencies, the situation is evaluated on a case-by-case basis. If approved, the provider is not penalized for the absence since they do not have control over such circumstances. However, to align with the requirements of the new Final Rule, ACUDEN | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | has requested a waiver for up to two years to implement the practice of paying providers based on authorized enrollment. This waiver allows ACUDEN the necessary time to amend procedural manuals, update the CIMA system, and train staff on the new processes. Once these updates are fully implemented by 2025, ACUDEN will begin paying providers based on enrollment rather than attendance, ensuring that payment policies better account for fixed costs and adhere to the Final Rule's requirements. | | |
| Vermont | Northeast | Amendment #4 | | No. | It is not a generally-accepted practice for each provider type. If no, describe the provider types not paid by authorized enrollment, including the data showing it is not a generally-accepted payment practice for that provider type, and describe how the payment | Providers are paid on the weekly amount approved by either attendance of the child or a code to represent the reason for the absence. Coded days include provider closed days, thirty (30) per child per state fiscal year, and child absence days, which are also set at thirty (30) per child per state fiscal year. This process ensures that CDD is able to monitor for | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | policy accounts for fixed costs: | fraud. It also provides flexibility to families to use vacation or have sick time without more out of pocket costs, and to allow child care providers to have holiday or vacations without loss of funds. | | |
| Virginia | Northeast | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | The Department pays vendors for up to 60 absent days per-child, per-fiscal year (June 1- May 31). This threshold was identified based on a review of data and reflects the number of absence days that is sufficient to cover the vast majority of absence events among children in the CCSP in an effort to move toward a full pay-by-enrollment model. The Agency will make strides toward payment by enrollment, as required by provision § 98.45(m)(2) in the CCDF Final Rule. In June 2024, VDOE requested a waiver to comply with the requirement to pay by enrollment. This will give the agency time to revise its policies, processes, and technology to comply with the requirement while |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | maintaining strong internal controls and review procedures. |
| Washington | Northwest | Amendment #1 | | No. | | | It is impracticable. Describe provider type(s) for which it is impracticable, why it is impracticable, and the alternative approach the Lead Agency uses to delink provider payments from occasional absences, including evidence that the alternative approach will not undermine the stability of child care programs, and thereby accounts for fixed costs: | When a child who has been approved for subsidy attends at least one day in the calendar month within an authorization period, the provider is eligible to claim absent days that month. Absent days are days that a child was scheduled to attend and was absent. This is based on the schedule the parent has with the provider and not on what schedule DCYF has in its system. Providers may not claim for payment for more days than authorized for that month. Licensed family home providers are authorized a monthly unit which providers may claim when the child attends care during the month. Payment practices for non-relative, in-home and relative (FFN) care are by hour. No absent days or hours are allowed for FFN care as payment based on enrollment is not a generally-accepted practice for this type of care -- most FFN providers are |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | relatives who do not collect payment when care is not provided, and in cases and the generally accepted payment practice for this form of care in the private market is by the hour. Furthermore, FFN payment rates are collectively bargained with SEIU 925 and bargaining has never broached the subject of paying FFN providers based on enrollment. DCYF requires additional time to comply with the requirement as to center and family home provider types for whom it is a generally accepted practice. DCYF will therefore request a waiver as to this provision. |

# Content Report For 4.5.1. Child care services available through grants or contracts

**Fiscal Year: FY 2025-2027**
**Number of reported States/Territories: 56**

| State/Territory | Region | Plan Version | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Describe: | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Describe: | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | Children with disabilities. Number of slots allocated through grants or contracts: | Describe: | Infants and toddlers. Number of slots allocated through grants or contracts: | Describe: | Children in underserved geographic areas. Number of slots allocated through grants or contracts: | Describe: | Describe: |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alabama | Southeast | Amendment #3 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The lead agency has submitted a waiver for this requirement. |
| Alaska | Northwest | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | AK is not meeting the requirement to provide child care services through grants or contracts and will be submitting a waiver request for this requirement. |
| American Samoa | Southwest | Amendment #1 | | | | | No. If no, describe any Lead | | | | | | | The Lead Agency will be requesting a temporary waiver |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | and will use that time to work with our local Office of Procurement and other finance subject matter experts to determine how best we can comply with the 2024 CCDF Final Rule about issuing "some grants/ contracts" for infants/ toddlers, children with special needs, and an underserved area. |
| Arizona | Southwest | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency is requesting a waiver to implement this provision of the New CCDF Final Rule. The Lead Agency anticipates completion of this provision by August 2026. |
| Arkansas | Southwest | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Families enrolled in contracted slots will also have the option to select a different provider as needed. | | | | X | OEC will seek to serve approximately 5 children. | X | OEC will seek to serve approximately 50 children. | X | OEC will seek to serve approximately 50 children. | |
| Colorado | Northwest | Initial Submission | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have | Under CCCAP, each county has the option of developing slot contracts with licensed child care centers and family child care homes. Two counties are currently approved to offer slot contracts. | | | | X | As of 5/13/2024, 3 slots are allocated for children ages 0-36 months who are also engaged in a child welfare program. | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | choices when selecting a provider: | | | | | | | | | |
| Connecticut | Northeast | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The OEC will submit a 2 year waiver to meet compliance with the 2024 Final Rule to implement some grants and contracts. |
| Delaware | Northeast | Initial Submission | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Our “state-funded” early care and education (SFECE) initiative blends state and federal funding to fund child care "seats." Delaware will utilize CCDF funding each program year to expand SFECE contracts to achieve the new CCDF rule goals. SFECE program years align to the state fiscal year. Child enrollment in our state-funded early care and education (SFECE) program is managed by the program itself, not by the Lead Agency. The Department of Education contracts with individual SFECE programs, statewide, to perform the Eligibility, Recruitment, Selection, Enrollment and Attendance portions of the Head Start Program Performance Standards. The Department lists each SFECE program on its website so that parents can choose to enroll their child for free if they meet the SFECE eligibility requirements. The Department of Education also contracts with a vendor to provide non-traditional hour care on Saturday and Sunday each month to families participating in Military Drill weekends. | | | | X | At least 10% of 1,703 seats in state fiscal year 2025 is at least 170 seats statewide per year. This number will change with each program year within the Federal Years 2025 through 2027. | X | 166 infant seats and 129 toddler seats out of 1,703 seats in state fiscal year 2025. This number will change with each program year within the Federal Years 2025 through 2027. | | | |
| District of Columbia | Northeast | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Grants for child care slots are available for infant and toddler care and school-age care for children with disabilities. Families of children with disabilities will have a choice to enroll in a grant-funded Access to Quality Child Care for Children with Disabilities program or access child care through any Level I or Level II child care provider or an in-home provider through a subsidy voucher. | | | | X | OSSE’s Access to Quality Child Care for Children with Disabilities grant program for direct child care slots for infants and toddlers and school-age children with disabilities began enrolling children in FY25. OSSE awarded grants funded with local subsidy funding to create dedicated child care slots for subsidy-eligible infants and | X | OSSE’s Access to Quality Child Care for Children with Disabilities grant program for direct child care slots for infants and toddlers and school-age children with disabilities began enrolling children in FY25. OSSE awarded grants funded with local subsidy funding to create dedicated child care slots for | X | The District is one geographic area; however, the District monitors child care supply and access across all eight wards of the city and prioritizes investments that support children, families and child care providers furthest from opportunity. When awarding the Access to Quality Child | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | toddlers with disabilities. Through this initiative, OSSE created 78 slots—8 for infants and 70 for toddlers—though these numbers may fluctuate based on provider capacity, enrollment, and children's ages. Starting in FY26, began using CCDF funds in conjunction with local subsidy funds. Grantees are child care subsidy providers and the dedicated slots must be used for subsidy-eligible children. The cost-per child included in grant awards will provide higher subsidy payment rates for contracted slots as compared to OSSE's subsidy payment rate for children with special needs accessing vouchers. | | subsidy-eligible infants and toddlers with disabilities. Through this initiative, OSSE created 78 slots—8 for infants and 70 for toddlers—though these numbers may fluctuate based on provider capacity, enrollment, and children's ages. Starting in FY26, also began using CCDF funds in conjunction with local subsidy funds. Grantees are child care subsidy providers and the dedicated slots must be used for subsidy-eligible children. The cost-per child included in grant awards will provide higher subsidy payment rates for contracted slots as compared to OSSE's subsidy payment rate for children with special needs accessing vouchers. | | Care for Children with Disabilities grant, OSSE used indicators of need into account in order to ensure that children in underserved wards of the District benefit from direct child care slots. Grantees operate in all wards except Wards 3 and 6 and provide services for children from every ward except Ward 3, with the greatest number of children served from Wards 8, 7, and 4 respectively. | |
| California | Southwest | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Resource and Referral (R&R) agencies located in every county throughout the State are required to have written referral policies available to all persons requesting them regardless of income level or other eligibility requirements. The R&R agencies are required by regulation to assist parents in choosing a provider by providing parents with information regarding how to select child care services which will meet their needs and a range of possible child care alternatives from which to choose. Additionally, on the consumer education website mychildcareplan.org, in the resource section, there are several resources related to helping parents choose a child care that fits their needs. See: https://mychildcareplan.org/resource-category/?topic=choosing- child-care. Contractors will also engage in conversations with families regarding alternative child care options in their community in the event that their program may not meet all of the child care needs of the family. This will | | | | X | The Lead Agency administers multiple child care and development programs for direct service of children receiving CCDF. These programs serve children under the age of 13 and older children with exceptional needs through contracts for child care slots in centers or in family child care home networks operated or administered by either public or private agencies. | X | LPCs identify areas of local child care need (such as Infant and Toddler gaps and child care deserts) through local level annual Zip Code Priority Reports and Needs Assessment Reports, every 5 years. LPCs us data to determine local funding priorities and critical areas of need to support capacity building. In addition to data zip code data, LPCs Collaborate | X | The Migrant Child Care and Development Program (CMIG) provides $43.8 million in State General Fund to support 2,226 children for children of migrant agricultural families. Counties serving up to 30 children through the CMIG program include: San Luis Obispo, Solano, Colusa, Imperial, Ventura, Siskiyou, and | |

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | happen sometimes prior to having been counseled on their child care choices through an R&R agency. In the event that a family's needs were not being met providers/contractor will also refer the family back to a local R&R for more options or in counties where there are centralized eligibility lists (CEL), they can support the family to apply to the CEL. The general process for parents to select providers regardless of if they have a certificate or would like to use a grant/contract slot for direct services centers on Resource and Referral (R&R) agencies. Families, including those who enroll with a provider who has a grant or contract, can request a list of providers based on the families' needs from their R &R Programs. The range of possible child care choices for which the R&R agencies provide information includes child care services through grants or contracts for child care slots. Parents who enroll with a provider who has a grant or contract can learn through their local R&R agency about other choices, including other direct-contract providers. Additionally, on the consumer education website mychildcareplan.org, parents can search for child care using filters for special needs, which list certain disabilities, and also by filters for subsidies, such "Accepts Subsidized Payments," "Bridge," "CDE: All but State Preschool," "CDE: State Preschool," "Head Start," and "Other Public Contract." To ensure that parents have a variety of child care choices, the Lead Agency uses county-wide zip code priority data to address gaps in child care including addressing infant and toddler child care supply and demand. Zip code data is used to prioritize subsidized funding to support the need for direct-contract child care slots across California through programs such as the general child care and development program (CCTR) and family child care home education network program (CFCC). | | | | | These programs are the general child care and development program (CCTR) and the family child care home education network program (CFCC). California funds 54,327 slots in these direct-contract programs. All of these slots are available to children with disabilities, but California does not allocate a particular number of slots in these programs to children with disabilities. While these slots are not specifically allocated to children with disabilities, California ensures that there are direct contract slots available specifically for children with disabilities through its application of child care priorities. In direct-contract programs as in all of California's child care and development programs, if two or more families are in the same priority for child care services in relation to income, the family that has a child with exceptional needs shall be admitted first. All of the providers where the 54,327 slots are located are CCDF eligible providers that meet all CCDF requirements. The funding used for CCTR and for CFCC is federal CCDF funding and state general | | with subsidized and nonsubsidized child care providers, county welfare departments, human service agencies, regional centers, job training programs, parent organizations, early start family resource centers, local child care resource and referral programs, and other interested parties to identify local level child care gaps like not having enough spaces for infant and toddler care. LPC zip code data is then used to support The General Child Care and Development (CCTR) Request for Application (RFA) process. The Child Care and Development Division (CDSS) prioritizes applications (1) providing direct services to infants and toddlers and (2) serving children in underserved areas per the LPC priorities. Award eligibility and distribution is determined by slot-type information and headquarter address information provided by the applicant. Funding is not guaranteed to all eligible applicants due to the amount of funding provided in the budget each year. The | | Merced. Counties serving between 31-100 children through the CMIG program include: San Diego, Stanislaus, Riverside, San Joaguin, Sacramento, Monterey, and Fresno. Counties serving > 100 children through the CMIG program: Kern & Tulare. | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | funds. In addition, Child Care for Children with Severe Disabilities (CHAN) provides $1.9 million State General Fund in the budget to support 111 children and young adults with severe disabilities under 21 years of age. | | CCDD has been able to award the full request of infant/toddler slots to eligible applicants regardless of LPC priority during the last three fiscal years. | | | |
| Georgia | Southeast | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency has submitted a waiver in order to develop a service deliver model for this activity. |
| Guam | Southwest | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Bureau of Child Care Services does not currently provide direct child care services through grants and contracts for child care slots. The BCCS plans to further provide services while operating with the challenges associated with being a line agency under the Government of Guam. |
| Florida | Southeast | Initial Submission | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The DEL makes contracted slots available to all ELCs. Contracted slots may be used to address capacity issues such as child care deserts, infant/toddler care availability, and care during nontraditional hours. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholder | | | | X | Contracted Slots are made available to ELCs as needed. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in | X | Contracted Slots are made available to ELCs as needed. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and strategically update legislative language in | X | Contracted Slots are made available to ELCs as needed. To ensure contacted slots are used for each of the three targeted population groups, the DEL will submit a waiver for additional time to thoughtfully and | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Information on parental choice is made widely available to parents through the DEL website and consumer education materials provided by the ELCs and DEL. Further, when parents become eligible for SR, they must sign a Terms and Conditions agreement that acknowledges their rights to choose from a variety of child care categories pursuant to 45 CFR 98.30. Parents are not limited to selecting providers that receive contracted slots; those that choose to utilize services with ELCs implementing contracted slots have access to the full range of child care services available. | | | | | coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholders. | | coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholders. | | strategically update legislative language in coordination and collaboration with elected members of the Florida Legislature, stakeholders and leadership to ensure the revised statute sufficiently addresses the changes while considering impacts, if any, to parents, providers, Early Learning Coalitions and other stakeholders. | |
| Hawaii | Southwest | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Department of Human Services is the lead agency for TANF and through TANF the department has a contracted service with the Hawaii Department of Education to operate afterschool care programs at nearly 180 (this number varies by school year) public elementary school campuses statewide, including rural and underserved geographic areas. Parent(s) also have the option to select other child care providers through the child care certificates if they prefer. Future plans include a pilot proposal for creating subsidized slots for infant and toddler care as the Department of Human Services is currently receiving technical assistance from the Office of Child Care. |
| Idaho | Northwest | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care | | | | | | | Currently, IDHW does not pay direct child care services through grants and contracts through child care slots. IDHW will request a waiver to obtain |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | technical assistance on how to implement this requirement. |
| Illinois | Midwest | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The application used by contracted providers is the same used by the certificate program and lists all qualified provider types. Contracted providers utilize the same eligibility system as the certificate program enabling the transfer of families between contracted and certificate providers without interruption to the 12-month eligibility period. Child Care Resource and Referral agencies are required to work with all families seeking child care. Based on the parent's needs, the CCR&R will offer a referral list of providers in their area who are listed on the CCR&R provider database. Vacancy checks are done by the CCR&R and providers may contact the CCR&R to identify vacancies. The Lead Agency does not allocate slots per population type. This is determined by licensed capacity. | | | | X | Slots funded through Site Administered contracts with centers and home networks are open to families enrolled with the provider who are determined eligible for subsidy. Sites may apply for a 20% add-on to standard rates for caring for children with special needs. These contracts do not specify how the slot are allocated by the provider, including designated slots for any specific population or locations. | X | Slots funded through Site Administered contracts with centers and home networks are open to families enrolled with the provider who are determined eligible for subsidy. These contracts do not specify how the slot are allocated by the provider, including designated slots for any specific population or locations. | X | Slots funded through Site Administered contracts with centers and home networks are open to families enrolled with the provider who are determined eligible for subsidy. These contracts do not specify how the slot are allocated by the provider, including designated slots for any specific population or locations. | |
| Indiana | Southwest | Amendment #3 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency is currently working to develop models to determine supply and demand for CCDF vouchers in the state. Beginning March 2026, and each year thereafter, an assessment of needed supply will be determined and depending on fund availability, contracted slots will be used to boost supply in those areas. The Lead Agency will be requesting a waiver to allow for the model to be developed and analysis completed. |
| Iowa | Midwest | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care | | | | | | | The lead agency currently contracts for wraparound services for HeadStart, Title 1 preschool and special education classrooms but |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | does not currently funds slots absent these core programs. The Lead Agency is requesting a waiver for this requirement and will be reviewing data from our new Iowa Child Care Connect dashboards to identify areas of greatest need. |
| Kansas | Midwest | Amendment #3 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Kansas Early Head Start Child Care Partnerships provides intensive, comprehensive program designed services to individualize to the unique strengths and needs of each child and family. KEHS programs are required to involve parents and community representatives in all areas of the program, including policy, program design, curriculum, and management decisions. All KEHS programs follow Head Start Performance Standards that require at least 10 percent of total enrollment slots be made available to children with disabilities. Kansas Early Head Start Child Care Partnerships also offer comprehensive services to childcare partner programs that exhibit needs, desires to participate, and has willingness to follow enhanced program regulations. KEHS grantees also offer their own center-based classes. Three hundred and fifty-nine slots are available in 38 Counties in Kansas. Counties included are Allen, Anderson, Bourbon, Ford, Clay, Washington, Republic, Cloud, Ottawa, Shawnee, Douglas, Franklin, Lyon, Ellis, Rush, Russell, Rooks, Saline, Dickinson, | | X | 36, all Kansas Early Head Start Child Care Partnership programs follow Head Start Performance Standards that require at least 10 percent of total enrollment slots be made available to children with disabilities. | X | 359, all Kansas Early Head Start Child Care Partnership slots are for infants and toddlers. | X | 359, all Kansas Early Head Start Child Care Partnership grantees have completed community needs assessments to determine the need for their services in their community and help them determine the numbers that they serve, so all areas have been determined as underserved. Priority was given to those that served in the 5-year estimate of the top 5 counties with the highest official poverty rate and the 5 counties with the most persons in poverty according to the Census American Community Survey 2019. The high priority counties are Riley, Crawford, Stevens, Kearny, Woodson, Sedgwick, Johnson, Wyandotte, Douglas and Shawnee. Kansas Early Head Start Child Care Partnership services are serving children in the high priority counties of | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | McPherson, Finney, Grant, Geary ,Gray, Hamilton, Haskell, Kearny, Morton, Neosho, Scott, Seward, Stanton, Stevens, Wichita, Wyandotte, Cherokee, Crawford, Labette and Montgomery. Services are provided by these entities: Bright Beginnings (KEHS CCP), Clay County Child Care (KEHS CCP), Community Action, Inc. (KEHS CCP), East Central Kansas Economic Opportunity Corporation (ECKAN) (KEHS CCP), Early Childhood Connections (KEHS CCP), Heartland Early Education (KEHS CCP), Kansas Children's Service League (KCSL) (KEHS CCP), Project Eagle (KEHS CCP), and Southeast Kansas-Community Action Program (SEK-CAP) (KEHS CCP). | | | | | | | Crawford, Stevens, Kearny, Wyandotte, Douglas and Shawnee. | |
| Kentucky | Southeast | Amendment #3 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | At this time, Kentucky does not offer direct child care services through grants and contracts and will be requesting a federal waiver by November 2024. |

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Louisiana | Southwest | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | To help build the supply of infant and toddler care, the Lead Agency offers infant, toddler, and three-year-old contracted care. These contracts have been offered statewide, though some parishes (approximately 40%) have not yet accepted these contracted seats. Communities are not required to contract for direct service slots. Although not all parishes have yet chosen to implement contracts, all parishes in the state have been offered the opportunity to request contracts. The Lead Agency will be working with those parishes who have not yet implemented contracts to build capacity and opportunity for future contracts. With children being served through contracted seats in both urban and rural areas across the geographic regions of the state, the contracted seat program allows the Lead Agency to ensure that families, including in rural areas, have access to child care assistance. CCDF-certified providers statewide are eligible to request contracts, and contracts are awarded in order to build supply in underserved geographic areas and for underserved groups of children. Parents are guaranteed choices when selecting a provider because parents may be awarded a voucher seat or a contracted seat: parents who wish to select a CCDF provider who is not receiving a contracted seat may apply for the | | X | Louisiana will be requesting a waiver in order to determine how to implement grants/contracts for children with disabilities, since young children with disabilities are already categorically eligible to receive services, even when there is a waitlist. | X | The Lead Agency is serving approximately 2500 infants and toddlers through grant/contract slots. The number of infants and toddlers served may overlap with the number of children in underserved areas. | X | The Lead Agency is serving approximately 900 children in underserved geographic (rural) areas through grant/contract slots. The number of infants and toddlers served may overlap with the number of children in underserved (rural) areas. | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | CCAP voucher program instead. The Lead Agency will also be working with all parishes to ensure the full expansion of contracted seats statewide. | | | | | | | | |
| Maine | Northeast | Amendment #4 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency plans to build a fiscal plan to incorporate direct child care services through grants and contracts for child care slots by FFY 2026. |
| Michigan | Midwest | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | While Michigan has piloted infant/toddler contracts we plan to request a two year waiver for the contract/grant requirements to ensure we are building the required contracts to meet the needs and increase supply. We will be submitting the waiver as the changes that will need to be made will take legislative and technology changes as well a training plan to ensure that agency staff understand this change. It is anticipated that the agency will fully implement grants and contracts by August 2026. |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Mississippi | Southeast | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency intends to submit a waiver for services through grants and contracts. The Lead Agency intends to request technical assistance on how to utilize grants or contracts to expand child care service offerings to families. |
| Maryland | Northeast | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Maryland State Department of Education (MSDE) is developing a program to allocate grants and contracts to licensed child care providers. This initiative aims to increase access to affordable child care for low-income families, enhance the quality of early childhood education, and support child care providers in meeting state standards. To achieve this goal, MSDE will partner with early childhood stakeholders to expand child care slots through grants and contracts. This strategy can significantly benefit child care centers, family child care programs, and the families who rely on them. As we develop these new program ideas, we encourage the inclusion of family child care providers and a collaborative design process with both the field and families. Maryland is currently requesting a waiver for the contract/grant requirement. Maryland is in the process of beginning to conduct a |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | statewide supply and demand study. Once this study is complete, Maryland will submit a plan based on the findings to implement a contract and/or grant. Maryland anticipates implementing this plan in 2026-2027. |
| Massachusetts | Northeast | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | EEC contracts with center-based child care programs, including school age programs, and with family child care systems for family child care services at affiliated licensed family child care homes to ensure that families have a variety of choices for care providers. When families are offered a contracted seat with one of the contracted providers they are informed of their choices within that contracted providers network of programs if applicable. Many of the contracted center based programs and family child care systems have multiple programs, locations and types of care. The contracted provider's Family Access Administrators review documents and counsels the family during intake about parent choice and their right to change providers at any time, the family signs all documents to ensure they were counseled on their rights. Additionally, families are informed of the option to move from their contracted seat to a voucher if the contracted seat no longer meets the needs of their family. | | | | X | EEC uses contracts as a mechanism for serving children with the highest needs which is inclusive of children with disabilities. Children with disabilities are considered a priority and are identified through the screening and enrollment for contracts. EEC serves approximately 110 children with disabilities through contracts. | X | EEC has allocated approximately 5,235 contracted slots for infant and toddler populations including our family child care 'under 2' and 'over 2' contracts. | X | EEC established seat allocation targets to prioritize access underserved geographic areas which EEC defined as child care deserts and areas with high child poverty. This prioritization was used in determining the target seat allocation for approximately 12,000 seats. Though EEC did not designate a specific number of seats, this prioritization was a focus of the overall seat allocation analysis and formula for contracts. Additionally, EEC provided a list of the child care deserts and high child care poverty areas and contracted providers were asked to identify if their program serves these areas. Programs in these areas received additional points in their bid score EEC is actively in the procurement process for its contracts and will be | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | collecting the number of seats/slots as a part of the new contracts starting 10/1/24. | |
| Minnesota | Midwest | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The contract for Migrant Child Care services reserves child care slots at Head Start programs where possible; in areas of the state where an eligible family is seeking services but Head Start is not an accessible option, the contracted slot goes to a community-based child care program that meets Head Start standards. This ensures that children served by these contracted slots receive care that meets high standards of quality while remaining flexible to ensure care meets the family's needs in terms of location, hours, and availability. | | | | X | 65 (on average per fiscal year) | X | 335 (on average per fiscal year) | X | 295 (on average per fiscal year) | |
| Missouri | Midwest | Amendment #2 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Lead Agency offers competitive bids for Early Head Start contracts in eight areas of the state for slots for young children. These contracted slots are offered in addition to the availability of other contracted programs in the community. | | | | | | X | Subsidy eligible children qualify for slots for children participating in Early Head Start. Not all available slots are filled with subsidy eligible children (i.e., prenatal, incarcerated parent, and child abuse/neglect). | | | |
| Montana | Northwest | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency is gathering information to understand the areas of need in Montana to meet the federal requirements to provide direct child care services through contracts and guides. Additionally, the Lead Agency must evaluate cost and implementation, including IT/database expenses. |
| Nebraska | Midwest | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through | | | | | | | Currently, the Lead Agency does not pay direct child care services through grants and contracts through child care slots. The Lead Agency will request a waiver to obtain |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | technical assistance on how to implement this requirement. |
| New Hampshire | Northeast | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | NH plans to submit a waiver and will work with state leadership team and state advisory council(s) to determine how we will become compliant with the federal rule change. |
| North Carolina | Southeast | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | DCDEE will develop an implementation plan for the use of grants and contracts for child care slots, but will temporarily request a waiver. In the 2024-2025 SFY DCDEE contracted with Southwestern Child Development Commission to provide business services to 18 Family Child Care programs by awarding grants to expand or establish licensed slots. |
| North Dakota | Northwest | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency is still developing plans on how to offer child care services through grants or contracts and will be pursuing a waiver. |
| Nevada | Southwest | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures | Parents have the option of enrolling a child directly with the contracted provider or enrolling the child under a certificate care provider (cannot use both types for the same child). Parents with multiple children can choose the appropriate care setting | | | | | | X | 310 | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | for each child and enroll through either certificate, contracted slot (OST/OSR), or wraparound (Head Start/Early Head Start) care. The CCR&R agencies which administer the subsidy program in Nevada on the lead agency's behalf hold the contracts with the OST and EHS/HS organizations. The CCR&R agencies are provided budget amounts for these contracts set by the lead agency which allow the contracted providers to serve a specific number of CCDF-eligible children. These contracted slots are only available to CCDF-eligible children. | | | | | | | | | | |
| New Jersey | Southeast | Initial Submission | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | DHS/DFD funds the Parent Linking Program (PLP), which embraces a two-generational approach that provides child care services and comprehensive wraparound services to teen parents in middle and high schools. Programs are located in six counties, managed by community-based organizations who provide intensive case management to the teens, and work closely with the schools, CCR&R, and child care providers. The PLP is contracted for approximately eighty (80) infant slots and to provide high-quality child-care services and comprehensive services for the teen parents to be successful in graduating high school. In addition, DHS/DFD has child care community voucher (CCVC) slots managed by the county CCR&Rs and Human Service Advisory Councils (HSAC). They work together to implement a Child Care Capacity and Need Roster for the county. Based on the county's child care needs, slots are dedicated to providers who are required to sign an agreement to serve lower income families and not impose fees above the State's assistance | | | | X | DHS/DFD offers a statewide Thriving by Three Infant and Toddler Child Care grant to licensed centers and Family Child Care providers. This grant supports the development and creation of infant and toddler slots statewide to encourage providers to expand child care slots over a three-year period (2023-2025). Grant funds were awarded to providers in 20 out of 21 counties in New Jersey. The grants help to build supply and increase families' access to high quality providers who have committed to increasing infant and toddler slots. A total of 383 licensed centers and 229 FCC providers were awarded Thriving by Three grants to fund a total of 4,354 new infant/toddler slots statewide. As noted above, DHS/DFD funds the Parent Linking Program (PLP) | X | The three programs referenced specifically target families and children in underserved areas of the state. 1. Thriving by Three grants operate in communities identified as child care deserts with few or no options for high-quality child care for infants and toddlers. A total of 383 licensed centers and 229 FCC providers were awarded funds that will create a total of 4,354 new infant/toddler slots in underserved communities across the state. Thriving-by-Three grants are State-funded. 2. CCVC slots are awarded in underserved areas with demonstrated community needs as determined by the county CCR&Rs and HSAC. NJ has 3,803 CCVC slots in 13 out of 21 counties. CCVC are direct service dedicated slots (based on a child | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | payment rate. Thirteen (13) out of 21 counties in New Jersey have dedicated CCVC slots. | | | | | in six urban underserved counties. PLP provides eighty (80) infant slots for high-quality child-care services and includes comprehensive case management services that support the success of teen parents in completing their high school education. In addition, DHS/DFD has Child Care Community Voucher (CCVC) slots managed by the county CCR&Rs and Human Service Advisory Councils (HSAC). They work together to implement a Child Care Capacity and Need Roster for the county. Based on the county's child care needs, slots are dedicated to providers who are required to sign an agreement to serve lower income families and not impose fees above the State’s assistance payment rate. New Jersey has awarded 3,803 dedicated CCVC slots in 13 out of 21 counties. | | care community needs assessment) that are targeted to providers who agree to service CCDF families. CCVC is based on family’s eligibility and unique circumstances related to income and work hours and is applicable to all age groups; rather than targeted direct service contracts to address particular categories of children’s needs, such as disability or infant and toddler care. CCVC contracts are CCDF-funded. 3. PLP serves teen parents in urban underserved middle and high schools in six counties. PLP sites provide eighty (80) infant slots for the teen parents enrolled in the program. PLP contracts are all located in urban poor districts and are directed towards infant/toddlers through a direct service contract. PLP contracts are CCDF-funded. DFD will be overhauling these programs to align with the CCDF direct service contract regulation provisions. Currently, CCVC is processed in the same | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | manner as all agreements. New Jersey submitted a waiver request for direct contracts for children with disabilities. | |
| Northern Mariana Islands | Southwest | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | Currently, CCDF has included grants and contracts in its QRIS, with grants /contracts being offered for those under Start Level 5. Grants/contracts will be offered for infants only classrooms. |
| Oklahoma | Southwest | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency does not meet this provision of the final rule and will file a waiver. |
| Rhode Island | Northeast | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | Rhode Island is planning on submitting a waiver for this final rule change and is currently working on operationalizing a pilot program for making child care services available through contracted slots. |
| South Dakota | Northwest | Amendment #3 | Yes, statewide. Describe how the Lead Agency ensures that parents | Licensed child care centers provide the contractual services for CCDF eligible children whose families participate in TANF, one of South Dakota's most vulnerable populations with limited access to resources. Contracts are available statewide but currently only two urban areas participate. Only these | | | | | | | | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | who enroll with a provider who has a grant or contract have choices when selecting a provider: | two areas have enough CCDF eligible families participating in the TANF program to generate provider interest and justify slots. | | | | | | | | | | |
| New Mexico | Southwest | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | New Mexico will not be requesting a waiver for grants or contracts. New Mexico only has one jurisdiction, statewide. ECECD will provide grants or contracts for infants and toddlers. The implementation will begin in areas where there is the highest need for infant and toddler slots and will expand as the need and resources allow. ECECD's approach to contracting for slots will specifically focus on the infant and toddler age group but will also be targeted toward children in underserved geographic areas. ECECD will release a Request for Proposals (RFP) that prioritizes providers in underserved geographic areas (e.g., areas with less than average child care slots) and will require providers to serve a minimum of children with developmental delays and disabilities. Therefore, the number for these categories overlap with the 2,000 contracted slots ECECD plans for Infants and Toddlers. | | X | At least 100 slots will be allocated through contracts for children with developmental delays and disabilities. | X | At least 900 slots will be allocated through contracts for infants and toddlers. | X | At least 1000 slots will be allocated through contracts for children in underserved communities. | |
| New York | Southeast | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how | As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. LDSSs that do choose to contract for child care slots cannot require that families use contracted | | X | OCFS allows LDSSs to individually choose to offer contracts for child care slots. It is left up to the LDSSs whether they choose to or not. As of | X | OCFS allows LDSSs to individually choose to offer contracts for child care slots. It is left up to the LDSSs whether they choose to or | X | OCFS allows LDSSs to individually choose to offer contracts for child care slots. It is left up to the LDSSs whether they choose to or | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | providers. Families in such LDSSs still have access to the full range of providers and are not required to use a contracted provider. Additionally, OCFS has Memoranda of Understanding (MOU) with the State University of New York (SUNY) and the City University of New York (CUNY) to provide contracted care to student parents. | | | 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. It is not currently known how many slots are allocated at the local level for children with disabilities but if they are eligible for CCAP, they are covered by local contracts. OCFS intends to begin to collect more information on available slots and publish that information on the OCFS website in 2025. | | not. As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. It is not currently known how many slots are allocated at the local level for infants and toddlers but if they are eligible for CCAP, they are covered by local contracts. OCFS intends to begin to collect more information on available slots and publish that information on the OCFS website in 2025. | | not. As of 8/28/2023, 22 LDSSs, including NYC, have selected the option to use contracts. It is not currently known how many slots are allocated at the local level for children in underserved geographic areas but if they are eligible for CCAP, they are covered by local contracts. OCFS intends to begin to collect more information on available slots and publish that information on the OCFS website in 2025. | |
| Ohio | Southwest | Amendment #2 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Department of Children and Youth (DCY) will be analyzing the fiscal impact for all of the federal child care payment rules that became effective in April 2024. DCY will plan to request a 2-year waiver while legislative and rule changes are identified and funding estimates are completed. The State's biennial budget process will begin in the fall of 2024, with the Governor preparing his proposed operating budget for the legislature by early 2025. The final statute and funding will not be known until July 1, 2025. Ohio will then begin implementing the policies that were modified and funded through the state budget process. Changes will also need to be made to Ohio's automated systems to support the use of grants and contracts. A waiver will be |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | submitted by October 1, 2024. |
| Utah | Northwest | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency has applied for a waiver to provide time to operationalize grants or contracts for direct child care services for children with disabilities, infants and toddlers and children in underserved geographic areas. The Lead Agency has requested technical assistance from federal partners and is researching other states' policies in this area. Prior to the waiver expiration, the Lead Agency will develop and execute a plan to meet this requirement. |
| Vermont | Northeast | Amendment #4 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | CDD is currently not in compliance with this provision and intends to file a waiver to allow time to bring Vermont in compliance. |
| Virgin Islands | Southeast | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | N/A |
| Virginia | Northeast | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct | | | | | | | Virginia intends to offer grants and/or contracts in the next two years and is requesting a waiver for implementation. |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | Virginia is currently funding a contract model with state general funds, and will use lessons learned to determine approaches for scaling to target populations with CCDF. |
| Washington | Northwest | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | DCYF intends to apply for a waiver for this provision. DCYF will implement a contracted slots program of 100 slots for infant and toddlers involved in child welfare. |
| Oregon | Northwest | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | The Lead Agency contracts with CCR&Rs to administer these sub-contracts. For Baby Promise contracted slots, cost per child amounts are individually negotiated with the local CCR&Rs and programs based upon provider type, estimated cost of care based on provider budgets and region. Providers indicate that these payments have stabilized their business. The Teen Parent Program currently serves children in 21 school districts around the state as well as through 1 Head Start agency. The teen parent contractors serve the parenting teens who have been identified and referred to them through their own school district processes. Many of the teen parent contractors have onsite child care centers that teens can use, some also subcontract out if the school does not have an onsite | | X | All three Oregon regions served by Baby Promise prioritize children with disabilities. The total number of slots currently budgeted for are approximately 190; however, the number of slots specifically for children with disabilities is unable to be provided at this time. Head Start and Early Head Start polices prioritize children with disabilities, with a goal of at having 10% of the children in each program who qualifies for Early Intervention Services. The Lead Agency contracts support this goal by paying the Special Needs Rate or High Needs Rate to providers for qualifying children. The High Needs | X | All three Oregon regions served by Baby Promise serve infants and toddlers. The total number of slots currently budgeted for are approximately 190. All of these slots qualify as infant and toddler. | X | All three Oregon regions served by Baby Promise are identified as underserved. The total number of slots currently budgeted for are approximately 190. All of these slots qualify as children in underserved geographic areas. | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | center or the teen chooses to use another provider. The Lead Agency holds contracts with Head Start providers (typically centers) as well as Early Head Start partnership home-based care providers. If a family is eligible for ERDC, they can use any provider eligible to receive ERDC subsidy payments. Contracted slots in the Head Start program are approved for full-time hours. Head Start and Early Head Start polices prioritize children with disabilities, with a goal of at having 10% of the children in each program who qualifies for Early Intervention Services. The Lead Agency contracts support this goal by paying the Special Needs Rate or High Needs Rate to providers for qualifying children. The High Needs rate is available to all children receiving ERDC, including those served by contracts, and is paid with CCDF quality dollars on top of the subsidized rate. The Lead Agency also provides contracted slots for apprenticeships through the Bureau of Labor and Industry (BOLI), funded with BOLI state general funds. Oregon is unclear as to whether its current grants and contracts meet the intent of the newly released CCDF final rule and has requested a waiver on May 6, 2024 to provide extra time (through August 2026) in the event that they do not. | | | rate is available to all children receiving ERDC, including those served by contracts, and is paid with CCDF quality dollars on top of the subsidized rate. | | | | | |
| Pennsylvania | Northeast | Amendment #1 | Yes, statewide. Describe how the | The Infant Toddler Contracted Slots (ITCS) Program uses CCDF funding and is an alternative to the traditional voucher system. Instead of having | | | | | | X | 850 slots | X | 29,453 full day slots 920 part day slots | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | funding follow the child, as in the traditional voucher system, the ITCS program, awards funding to a provider. If a child leaves the funded provider, the provider continues to be paid for the slot and is responsible to fill the slot with a different child eligible for Child Care Works (CCW). The program provides funding for 850 slots through ELRC contracts with 56 eligible Keystone STAR 3 or 4 providers. The eligibility for ITCS follows the same eligibility criteria for CCW funding. At the time eligibility is determined, families are provided information on the ITCS program (if slots are available). Eligible families may choose to enroll in either ITCS program or traditional subsidy funding. Pennsylvania Pre-K Counts (PA PKC) is a grant program to expand pre-kindergarten opportunities for eligible low income children with a focus on increasing availability in areas with high unmet need across the commonwealth. Eligible families must meet income requirements. Providers consider other factors during the enrollment process such as English Language Learners (ELL), community aspects, academic difficulties, and developmental delay for prioritization of slots. Children with identified developmental delays that meet the income criteria are eligible for the program and must be served in inclusive environments. Families utilizing PA PKC may also be eligible for other early learning services such as federal Head Start, subsidized child care and/or early intervention. They are encouraged to choose the most appropriate programs for their child and family based on their needs. The application process requires potential PA PKC grantees to include data regarding local community needs assessments and current early learning program availability. OCDEL awards PA PKC slots based on application scores and objective factors such as geographically underserved areas with a high unmet need. To determine unmet need, the Department reviews census data, the availability of publicly funded, high-quality pre-k services (Head Start school-based pre-k, locally sponsored programs) and county demographics. | | | | | | | | | | |
| Puerto Rico | Southeast | Amendment #1 | Yes, statewide. Describe how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have | The ACUDEN Quality System (AQS) serves as a comprehensive platform that hosts a registry of child care providers for children aged 0 to 5 years old throughout Puerto Rico, encompassing those with direct contracts. AQS enables parents to access detailed information about each provider, including their location, the variety of care services they offer, and the academic and professional credentials of their staff. The platform's commitment to transparency and the ease of access to this critical information empower parents to make informed decisions | | | | X | Contracts: 305 – Voucher: 608 | X | Contracts: 2,153 – Voucher: 379 | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | choices when selecting a provider: | when choosing the child care provider that best meets their preferences and standards, ensuring the well-being and development of their children | | | | | | | | | | |
| South Carolina | Southeast | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | Through the CCDF-funded Early Transition initiative, ABC Quality enrolled programs agree to reserve child care slots for children with developmental delays/disabilities. The slots are made available with CCDF funding. This initiative is a collaborative partnership with ABLE-SC, IDEA/Part C services at the Department of Health and Human Services, IDEA/Part B at the South Carolina Department of Education, South Carolina Inclusion Collaborative, and the SC Partners for Inclusion program. ABLE-SC conducts child care facility accessibility assessments and provides technical assistance/trainings based on findings during the assessment for the facility staff. School districts participating in this initiative are required to attend the summer Special Education Itinerant Teacher (SEIT) academy for training regarding coordination with and support for child care providers serving children with developmental delays/disabilities. The placement in which a child receives their special education supports and services is determined by the IEP team. The parent is a critical member of the IEP and is part of that decision-making process. The IEP must consider the general education placement first when determining a child's least restrictive | | X | The number of slots set aide for this initiative is 10. | | | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | environment. Early transitions expands the continuum of placements available to 3 year old children with IEPs to include a child care classroom, which is a general education setting. The Lead Agency plans to request an implementation wavier to expand availability of slots for infants and toddlers, children with special needs, underserved populations based on geographic locations. | | | | | | | | |
| Tennessee | Southeast | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The Lead Agency is implementing pilot partnerships with public/government and non-profit organizations to develop and establish locally managed child care administrative hubs that support a network of newly licensed child care providers through its Community Child Care Hub Grants pilot program. This pilot program is intended to increase licensed capacity in child care deserts and for historically underserved populations; lower administrative costs to lessen financial burdens on families; and deliver care that is safe, health, and educationally rich. Current partners with the Lead Agency include Chambliss Center for Children, Porter-Leath, and St. Mary Villa Child Development Center. The Lead Agency has requested a waiver regarding this provision, while awaiting guidance about whether current activities meet compliance. |
| Texas | Southwest | Amendment #1 | | | Yes, in some jurisdictions, but not statewide. | All 28 Board areas may implement contracted slots, based upon | | X | Boards have the option of contracting with child care | X | Boards have the option of contracting with child care | X | Boards have the option of contracting with child care | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Describe how many jurisdictions use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | legislative changes enacted in 2019. Texas Labor Code §302.0461 allows Boards to contract with Texas Rising Star programs to reserve slots to provide child care services for children participating in the CCS program. | | | providers for slots dedicated to children with disabilities. Currently, no boards are offering contracted slots. TWC was granted an extension of this prior approved waiver to August 1, 2026. | | providers for infant and toddler slots. Contracts in Alamo for 50 infant and toddler slots ended in February 2024. Currently, no Boards are offering contracted slots. TWC was granted an extension of this prior approved waiver to August 1, 2026. | | providers for children in underserved areas, such as child care deserts. Currently, no boards are offering contracted slots. TWC was granted an extension of this prior approved waiver to August 1, 2026. | |
| West Virginia | Northeast | Initial Submission | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | The West Virginia Department of Human Services Division of Early Care and Education does not currently have a dedicated program for grants or contracts. It is the intention of the state to develop a program that will provide grants, via the child care resource and referral agencies, to child care providers who are awarded a grant. Each child care provider awarded a grant will be responsible for keeping the slot filled with an eligible child; eligible children include those that qualify for child care subsidy and are infants/toddlers, children with disabilities (who agree to work closely with both the parent(s) and West Virginia Birth-3 (the states primary system of services and supports for children under age three who have or are at risk of a developmental delay). In addition, grants will be available for child care providers who begin providing services during nontraditional hours and in underserved areas. Child care providers who are |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | | | | either a Tier II or III program will be given priority at time of application. Those that are a Tier I will be given consideration if they begin the process of doing the work necessary to achieve a higher quality tier within the grant period. West Virginia currently has six child care resource and referral agencies which oversee every grant in the state based on regions. Each child care resource and referral agency will be tasked with awarding, at the onset of the grant, two awards for each of the categories mentioned above – infants/toddlers, children with disabilities and underserved populations. Initially, the new grant program will serve a total of 36 children. The grant will pay child care providers the statewide average rate applicable for each child served. WV will seek a waiver for this new federal requirement, it is anticipated that grants will be implemented by August 2026. Before that, data will be collected to ensure grants are targeting the appropriate groups. Stakeholder meetings will be held to discuss aspects applicable to this new initiative, including, but not limited to, the grant requirements, funding totals and policies/procedures for the grant process. |
| Wisconsin | Midwest | Initial Submission | | | Yes, in some jurisdictions, but not statewide. Describe how many jurisdictions | The Lead Agency's contract with United Migrant Opportunity Services (UMOS) specifies that parents may choose any | | | | | | | | |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | use grants or contracts for child care slots and how the Lead Agency ensures that parents who enroll with a provider who has a grant or contract have choices when selecting a provider: | provider who is eligible to receive Wisconsin Shares. Due to the recent change in CCDF rules (effective 4/30/2024) the Lead Agency has submitted a waiver to the Administration for Children and Families, Office of Child Care (ACF-OCC) to secure additional authority to provide services through grants and contracts. This waiver process will include statutory, administrative rule, and policy changes that could take up to two years to accomplish with the continued support of the State Legislature and key early care and education stakeholders. | | | | | | | | |
| Wyoming | Northwest | Amendment #1 | | | | | No. If no, describe any Lead Agency plans to provide direct child care services through grants and contracts for child care slots and skip to question 4.5.2. | | | | | | | DFS is currently researching and exploring how to implement this requirement and will be submitting a waiver request. The Department will conduct research, review data identifying underserved geographic areas, number of CCDF eligible children with disabilities, number of CCDF eligible infants and toddlers, licensed capacity for infants and toddlers (including # of licensed slots, # of occupied slots, and identification of waitlists), and develop a plan to implement some contract or grants for the identified populations. Federal Technical Assistance may be required for successful implementation of this requirement. |

# Content Report For 4.4.1a. Prospective payments to all provider types

## Fiscal Year: FY 2025-2027
## Number of reported States/Territories: 56

| State/Territory | Region | Plan Version | Yes. If yes, describe: | Describe: | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Describe: |
|---|---|---|---|---|---|---|
| Alabama | Southeast | Amendment #3 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The lead agency has not adopted paying providers prospectiv request time to implement the new policy based on the Final F |
| Alaska | Northwest | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively | AK is not meeting the prospective payments requirement and requirement. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| American Samoa | Southwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | It is not a generally-accepted payment practice for types of ch family child care home, in-home), all of whom came into existe CCDF subsidies. It should be noted that the CCDF created th payment practices established and implemented by the Lead important is that based on the current generally accepted prac from the date their invoice is approved for payment. On avera providers are issued via direct deposit within 14 business day |
| Arizona | Southwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency is requesting a waiver to implement this pro Agency anticipates completion of this provision by August 202 |
| Arkansas | Southwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for | Arkansas is seeking to move toward a system that enables pa accomplished, the long-term goal would be to pay providers p technical systems for payment must be replaced with a syster system will enable Arkansas to update presumptive eligibility l gross income as applying per family regardless of the number |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | will continue to leverage eligibility from other public assistance such as Head Start, Early Head Start, etc. particularly for vuln next year but not before the October 1, 2024, implementation providers, the Office of Early Childhood will engage in intentio programs designed to provide greater access while informing implementation. Addressing provider shortages by utilizing ne support the opening and expansion of quality care facilities st |
| California | Southwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | California has requested a transitional and legislative two-yea through August 1, 2026, to implement the practice of paying p 2025-26 legislative and budget processes. Currently our payn which added Welfare and Institution Code section 10277, requ For providers accepting subsidy vouchers, child care reimburs submission of a complete monthly attendance record or invoic care home education network, reimbursement shall be made sign-in and sign-out sheet; 2. A schedule for the payment of s provider; 3. A provision requiring that if a provider submits atte and not all individual records or invoices within the submissio payment, payments will not be withheld for those records or in provide a payment; 4. Procedures that establish clear process underpayment issues, which must include provider written co contractor is unable to make payment within 21 calendar days provider will be notified within a reasonable timeframe of the c circumstance causing the delay of reimbursement payment. |
| Delaware | Northeast | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The lead agency will be requesting a waiver as additional time |

| | | | | | | |
|---|---|---|---|---|---|---|
| District of Columbia | Northeast | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The District is not in compliance with the requirement to pay a request for a temporary waiver of compliance with this require |
| Colorado | Northwest | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | CDEC does not currently pay any providers prospectively. CD prospectively by August 1, 2026. CDEC does not have data d payment practice. CDEC currently pays all provider types eve program rules will be revised effective August 1, 2026 to pay a process that engages counties, child care providers, and fami take place to change rule to pay based on enrollment for all a |
| Connecticut | Northeast | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment | To date our payment process, quality controls and fraud detec that requires provider to confirm care of child and dates of lea payments are for services rendered and limit the efforts for an statutory limits on the amount of payments that can be recoup repayment extend over several quarters and multiple fiscal ye collection and are cannot be redirected into the exact progran recoupment. In addition, if a provider is no longer serving chil funds will be difficult. This may especially be true for Relative their relative child needing care and ends with that child or far established for a potential significant increase in collection of participate. A new payment process and system would need t and Technology costs as well as the need for additional proce waiver to establishing prospective payments for a two-year pe Eligibility Certificate and payment processes with a prospectiv General Statutes and the efficiency and effectiveness of the C payments are issued within 15 days for billing for services. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | practice that ensures timely payment for that provider type: | |
| Florida | Southeast | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | DEL currently requires in the annual grant agreement all ELCs more than 21 calendars days for services rendered during the 4.500, F.A.C. and other applicable policies to align with the ne |
| Georgia | Southeast | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency cannot currently pay prospectively and has guidance. The Lead Agency has requested a waiver through A to develop and implement the necessary policies and procedu |
| Guam | Southwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment | For all provider types, after review of the certificate, child care doctor's excuse note, etc.), payment is processed within 21 ca being a line agency. The Guam Department of Public Health a Procurement Law and work with other government agencies. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Hawaii | Southwest | Initial Submission | Yes. If yes, describe: | Once determined eligible and initial payments have been issued, the Department of Human Services pays the child care subsidy payments prospectively to the family at the start of the month for that month's child care needs. | | |
| Illinois | Midwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Illinois is not currently paying providers prospectively. A 2-yea |
| Iowa | Midwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe | The Lead Agency acknowledges the CCDF regulations regard 4/30/2024. The Lead Agency's current IT system that handles pay prospectively and the Lead Agency is exploring new IT sc intends to submit a waiver request to come into compliance o |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Kansas | Midwest | Amendment #3 | Yes. If yes, describe: | After initial approval, authorized benefits are paid on a prospective basis, available at 6:00 am on the first day of the month. The family can then transfer benefits at any time during the month to make payment to their provider. | | |
| Kentucky | Southeast | Amendment #3 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | All CCAP participating providers are paid the month after serv reimbursed beginning July 1, 2024. We are currently research prospectively for our state with plans to move forward during t |
| Idaho | Northwest | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that | Payments are issued directly to eligible providers via check or month following the month when care was provided. For exan be made on the second business day of October. Idaho is dev alignment with the 2024 CCDF Rules. Idaho intends to apply prospective payments. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | ensures timely payment for that provider type: | |
| Indiana | Southwest | Amendment #3 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Payments are made to all providers bi-weekly, through direct ( days of the end of the pay period. The Lead Agency contracts every 2 weeks based on enrollment and allows for a child's oc 94% of licensed child care centers and child care homes parti providers have indicated through surveys or the review of the supporting children. The Lead Agency will be seeking a waive pay prospectively. |
| Louisiana | Southwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | At this time the Lead Agency is requesting a temporary waive works to update systems and processes. Currently all system majority of payments, are made within 14 days of services. |
| Maine | Northeast | Amendment #4 | Yes. If yes, describe: | Payment is issued on a lead agency approved biweekly billing cycle for the two weeks of service following the payment date. Providers verify current enrollment in our online management system (Baxter) ahead of that | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | prospective billing cycle and are paid after that enrollment verification for the upcoming two weeks of service. | | |
| Maryland | Northeast | Amendment #1 | Yes. If yes, describe: | Effective January 1, 2023, Maryland implemented advance payment as a strategy to increase the supply of and improve the quality of child care service across the seven (7) payment regions in Maryland. Advance Payment pays providers based on the number of children enrolled in the Child Care Scholarship (CCS) Program during the prior month. This payment strategy projects the amount owed to the provider for the month and divides it into two payments processed on the 1st and 15th of each month. Paying providers in advance provides greater financial resources to providers at the beginning and in the middle of the month versus paying providers in arrears for services already rendered. Maryland believes that the Advance Payment model combined with child care scholarship reimbursement rates at the | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | 70th percentile across Maryland will increase equal access to higher child care options for children eligible for CCS services. In addition, the major rationale for implementing advance payment was to increase equal access to child care by creating a payment system that exceeded or closely mimicked private pay received by child care providers as possible. | | |
| Massachusetts | Northeast | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Generally, EEC reviews, processes, and schedules payments request for reimbursement. Once scheduled in the Commonw overnight and disbursed the next day. All payments by EEC a providers and Child Care Resource and Referral agencies. C providers submit their billing to their assigned Child Care Res and Referral agencies aggregate their billing and submit to EE providers within 21 days of receiving an invoice (this was rece and Referral agencies are contractually obligated to offer elec voucher providers may still elect to be paid by check if preferr payments and will work to implement this change for provider |
| Mississippi | Southeast | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead | A completed invoice for services to CCPP are submitted thou ledger by the 5th or the 15th of each month. Payments are re receipt of the completed claims form or ledger. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | Agency's payment practice that ensures timely payment for that provider type: | |
| New Hampshire | Northeast | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | NH will be requesting a waiver in order to implement prospect weekly and payments are issued two times each week. For in by that Friday, and for invoices submitted by Friday, payment also available to providers. Direct deposit is not required but s |
| New Jersey | Southeast | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Providers are not paid prospectively. DHS/DFD utilizes an aut calculates attendance utilization and issues ACH payments to to meet 2024 CCDF Final Rule. |
| Michigan | Midwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally- | Child care providers bill electronically after care has been pro deadline, which is a few days after the pay period ends. If the generated within eight to ten days. If billing is done after the d within eight to ten days of the billing. Payroll is processed on a timely manner. Michigan will be requesting a two year waiver |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Minnesota | Midwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Agencies administering child care assistance must make payı complete bill from a child care provider. Local agencies receiv either paper vouchers or the online billing system and must de paid no later than 21 days after a complete bill is received. Le agencies in Chapter 9.3 (Payments to Providers) of the CCAF https://www.dhs.state.mn.us/main/idcplg? IdcService=GET_DYNAMIC_CONVERSION&RevisionSelect Yes, MN will submit a waiver. |
| Missouri | Midwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Currently, the Lead Agency pays providers the month after ch ensures providers have a current written agreement (i.e., cont assistance, prior to receiving funds. Once a provider submits record), the request is processed within three business days a institution on file within 7-10 business days. The Lead Agency therefore, the Lead Agency will need to establish policies and in the future. To establish a definition of prospective payments including child care providers, advocacy organizations, and fir recommendation for prospective payments. The Lead Agency funds are needed to pay prospectively, and plan accordingly. additional time to implement paying providers prospectively. |
| Montana | Northwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type | The Lead Agency acknowledges the 2024 CCDF rules require children participating in CCDF. The Lead Agency has requeste will be seeking technical assistance on maximize the efficient system. Currently, the Lead Agency pays within 21 calendar d Once a child care provider submits an invoice, the invoice is p made twice per week. After a payment, providers receive a St Explanation of Benefits (EOB) explaining what was paid for a database in 2025 and plans to incorporate prospective payme |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | adopt new policies to change payment methodology, and this Administrative Procedures Act (MAPA). |
| New Mexico | Southwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | ECECD pays child care providers on a monthly basis. Payme no later than the fifth day of the following month in which the s weekly pay run to capture any payments that were not paid in to submit a waiver for prospective payments. |
| North Carolina | Southeast | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Providers receive payment between the 15th and the 20th of t deposit. The Lead Agency recognizes that this is not compliar additional time to make functionality changes in NC FAST to f |
| North Dakota | Northwest | Amendment #2 | Yes. If yes, describe: | The Lead Agency allows child care | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | providers to certify for payment beginning on the 20th of the prior month. All payments certified prior to the 2nd to last working day of the month are processed that night to allow for payments to be received by child care providers on the first of the month. | | |
| Northern Mariana Islands | Southwest | Initial Submission | Yes. If yes, describe: | The CCDF Lead Agency pays prospectively. For example: for the month of July's services, providers will be paid no later than July 5. | | |
| Pennsylvania | Northeast | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Pennsylvania does not pay any provider prospectively. Child c service month by the fifth of the following month. The ELRC e of the month. Pennsylvania is applying for a waiver to meet to prospectively. The waiver is needed to provide time to make s |
| Nebraska | Midwest | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that | Generally, providers will receive a payment within 5 days of bi and last day of the month for services provided during that mo Agency currently lacks data indicating that paying prospective The Lead Agency will request a waiver to obtain technical ass |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Nevada | Southwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Current payment practices are to pay providers following serv is appropriate because: 1. Some children attend multiple prov for both providers to make proper payment to the correct one overpayment to a provider when parents transfer providers du Lead Agency to receive a timesheet signed by the parent and reimbursement period. |
| New York | Southeast | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Because NYS is a state-supervised, locally administered syst local code and regulations, including how providers contract w LDSS has to establish each provider accepting CCAP as a ve the local government, such as whether providers are paid eve are allowed to pay prior to the delivery of services but are not to allow, disallow, or defer a claim for child care services withi Child Care Time and Attendance system (CCTA) has been im attendance can be submitted electronically to the LDSS, and payments to the statewide payment system. The 21-day requ have resulted in more timely and accurate payments to provid direct deposit payment option for child care providers receivin timely payment. OCFS intends to submit a waiver request to ( regarding implementing prospective payments for licensed, re those types of child care programs historically and typically ar programs. However, in the case of informal legally exempt chi parents, providers, and other stakeholders report that families paying providers after care is provided and based solely on th pay is not a generally accepted payment practice for legally e: |
| Ohio | Southwest | Amendment #2 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data | Ohio pays providers at the frequency they determine, up to 4 provider and attendance is tracked. Upon the provider submit provides weekly payments if the business elects to submit att authorization and utilization. Monthly, between 15 percent to 3 program never utilize a single day. To safeguard payment for r payment but allows for holidays and absent days to count tow provider types. The Department of Children and Youth (DCY) federal child care payment rules that became effective in April while legislative and rule changes are identified and funding e process will begin in the fall of 2024, with the Governor prepa legislature by early 2025. The final statute and funding will not implementing the policies that were modified and funded throu |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Rhode Island | Northeast | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency is updating payment practices to reflect pro by ACF to come into compliance with this requirement. |
| South Dakota | Northwest | Amendment #3 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | We are currently implementing a planned system replacemen completion during the 2025-2027 State Plan timeframe. Once prospectively. South Dakota will be requesting a waiver to allc payments. |
| Tennessee | Southeast | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider | As The Lead Agency does not pay providers prospectively for the Lead Agency seeks to issue payment within ten (10) busir regarding this provision. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Oklahoma | Southwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency reimburses providers based on attendance<br>meet this provision of the final rule and will file a waiver. The L<br>compliance with Payment Practices to Providers. The Lead Ag<br>21- calendar days of receiving a complete invoice for services<br>Administrative Code changes and process changes with an a |
| Oregon | Northwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Lead Agency currently allows providers to bill via their ch<br>month for the total number of hours a child is scheduled to be<br>days. Payment in advance of care is a generally accepted pay<br>the current provider pay system, the Lead Agency is unable to<br>the beginning of the delivery of child care services. The gener<br>approximately 3-4 business days upon receipt of a completed<br>for implementation of prospective payments on May 6, 2024. |

| | | | | | | |
|---|---|---|---|---|---|---|
| Puerto Rico | Southeast | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | ACUDEN receives each child's monthly attendance sheets at document can be delivered by the provider or the parents in p must be received no later than 5 business days for the payme attendance document is evaluated by the Eligibility Techniciar 80% attendance rate, or otherwise has a reason to justify the enters the attendance into the electronic case management s ACUDEN central Finance Office gathers all approved attenda and issues payment for the services to be deposited in or befo electronic deposit into the provider's bank account. Currently, providers under Delegation Funds. Nevertheless, ACUDEN ha implement the practice of prospective payment for child care p guidelines established in the Final Rule. ACUDEN has begun regulations, and modifications to the CIMA system, which is e system is programmed and staff are trained on the new chang implementing the prospective payment system for child care p |
| South Carolina | Southeast | Amendment #1 | Yes. If yes, describe: | The process for prospective payments is from the date the Service Voucher Log (payment form) generates, any unpaid weeks up to the generation date is pulled plus the dates through the first Sunday following 28 calendar dates. The Lead Agency has a service period of one week, Monday to Sunday to pull full weeks at a time. The provider will certify that they anticipate the children on the SVL to be enrolled for the time period printed on the SVL. If the provider indicates any period of time that the children will not be enrolled, the system allows the provider to document the reason the child will no longer be enrolled and the last date of expected payment. | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | When the payment for the prospective services have paid, the provider is given a validation notice to confirm that the payments were made correctly before the next SVL generates. | | |
| Texas | Southwest | Amendment #1 | Yes. If yes, describe: | Boards prospectively pay all regulated providers (not including relative care providers) in their workforce area on a standard biweekly schedule set by TWC. Payment to child care providers is based on enrollment. While paying child care businesses prospectively is considered a generally accepted practice, this is not the case for relative care. | | |
| Utah | Northwest | Initial Submission | Yes. If yes, describe: | When applications are approved, the payment is issued on the same day. Monthly, ongoing assistance is authorized two business days prior to the end of the month to allow financial institutions processing time for direct deposit. Payments are issued based on prospective eligibility for the upcoming month. More than 95 percent of all providers opt to receive payment by direct deposit. For providers | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | who choose not to accept direct deposit, a check is issued prospectively and mailed to them. | | |
| Vermont | Northeast | Amendment #4 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Child care providers can bill for the services provided every tw week of billing. CDD will be seeking a waiver of the rule while and changes to the systems utilized to support payment pract |
| Virgin Islands | Southeast | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Pay prospectively prior to the delivery of services not applicab |
| West Virginia | Northeast | Initial Submission | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a | The current data system is not programmed for prospective p comply with this requirement. |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | |
| Virginia | Northeast | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | All vendors in the Child Care Subsidy Program receive payme Conduent, a third-party vendor who acts as the State Provide two service periods, the 1st through the 15th and the 16th thr generally two three weeks following the end of the service pe website (www.childcare.virginia.gov). The Agency will make s provision § 98.45(m)(1) to pay providers prospectively in the legislative and transitional waiver in June 2024 to provide mo technology constraints. |
| Washington | Northwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | Prospective payment is a generally-accepted payment practic to pay prospectively in the CCDF subsidy program, the Legisl legislative session is the next opportunity for this to occur. Pa relative care (FFN) are by hour and after services are provide bargained with SEIU 925. Also, FFN providers are typically re provided. DCYF intends to apply for a waiver for this provisio |
| Wisconsin | Midwest | Initial Submission | Yes. If yes, describe: | The Lead Agency ensures a full month's subsidy benefit amount is made available | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | through the parent's EBT card at the beginning of each month. A provider will enter into a written payment agreement with each parent that receives a child care subsidy. Parents are responsible for determining when the payment is transferred to the child care provider's account. | | |
| Wyoming | Northwest | Amendment #1 | | | No, it is not a generally-accepted payment practice for each provider type. If no, describe the provider type not paid prospectively and the data demonstrating it is not a generally-accepted payment practice for that provider type, and describe the Lead Agency's payment practice that ensures timely payment for that provider type: | The Department is currently researching and exploring how tc waiver request. The Department will conduct research, review provider types prospectively. Federal Technical Assistance ma requirement. |

**Implementation of the 7% Co-pay Cap based on FFY 2025-2027 CCDF Plan Responses (as of 2/25/26)**

The CCDF March 2024 final rule imposed a mandatory 7% cap on family co-payments.

*Summary of implementation status:*

- 19 Lead Agencies are non-compliant on the mandatory 7% cap and allow for co-payments that range from 9-27% of a family's income.
- 37 Lead Agencies limit co-payments to 7% or less of a family's income (are compliant with requirement)
    - 3 Lead Agencies have come into compliance with the requirement since initial FFY 2025-2027 Plan approval through the Plan amendment process.

NOTE: This data is based on the CCDF plan and not OCC monitoring.

**Lead Agency Implementation Details**

| Lead Agency | Co-pay Cap Amount | Current FY 25-27 CCDF Plan Compliance Determination |
|---|---|---|
| Alabama | 7% per child | Non-compliant (AL caps per child and requirement is at family level) |
| Alaska | 9% | Non-compliant |
| American Samoa | No sliding fee scale | Compliant |
| Arizona | 1.7% | Compliant |
| Arkansas | 4% | Compliant |
| California | 1% | Compliant |
| Colorado | 10% | Non-compliant |
| Connecticut | 7% | Compliant (*came into compliance with Amendment #1) |
| Delaware | 7% | Non-compliant (OCC Regional Office identified mismatch between what DE reported in their CCDF Plan versus the state's published sliding fee scale, which caps co-payments at 9%) |
| District of Columbia | 7% | Compliant |
| Florida | 10% | Non-compliant |
| Georgia | 7% | Compliant |
| Guam | 1.7% | Compliant |
| Hawaii | 9% | Non-compliant |
| Idaho | No percentage cap, Idaho uses flat rate for co-payments based on | Non-compliant |

| | | |
|---|---|---|
| | household size, income, and qualifying activity hours | |
| Illinois | 7% | Non-compliant (IL requires a nominal co-pay amount from all families that could be more than 7% of family income) |
| Indiana | 26% | Non-compliant |
| Iowa | 6.5% | Compliant |
| Kansas | 3% | Compliant |
| Kentucky | 7% | Compliant |
| Louisiana | 5.25% | Compliant |
| Maine | 10% | Non-compliant |
| Maryland | 1% | Compliant |
| Massachusetts | 11.9% | Non-compliant |
| Michigan | 5.23% | Compliant |
| Minnesota | 14% | Non-compliant |
| Mississippi | 6.5% | Compliant |
| Missouri | 6.3% per child | Non-compliant (MO caps per child and requirement is at family level) |
| Montana | 7% | Compliant (*came into compliance with Amendment #1) |
| Nebraska | 7% | Compliant |
| Nevada | 7% | Compliant |
| New Hampshire | 7% | Compliant |
| New Jersey | 5% | Compliant |
| New Mexico | 5% | Compliant |
| New York | 1% of family income that exceeds the state income standard (which is 100% of FPL) | Non-compliant (NY requires a nominal co-pay amount from all families that could be more than 7% of family income) |
| North Carolina | 10% | Non-compliant |
| North Dakota | 6% | Compliant |
| Northern Mariana Islands | 1% | Compliant |
| Ohio | 27% | Non-compliant |
| Oklahoma | 7% | Compliant |
| Oregon | 7% | Compliant |
| Pennsylvania | 7% | Compliant (*came into compliance with Amendment #1) |
| Puerto Rico | 2% | Compliant |
| Rhode Island | 7% | Compliant |
| South Carolina | 2% | Compliant |
| South Dakota | 2% | Compliant |

| | | |
|---|---|---|
| Tennessee | 5% | Compliant |
| Texas | Will implement a policy on 9/1/24 that caps co-payments at 7%. | Non-compliant (co-pay policy change will be rolled out incrementally at family redetermination) |
| Utah | 7% | Compliant |
| Vermont | 14% | Non-compliant |
| Virgin Islands | 2% | Compliant |
| Virginia | 5% | Compliant |
| Washington | 7% | Compliant |
| West Virginia | 7% | Compliant |
| Wisconsin | 12% | Non-compliant |
| Wyoming | 7% | Compliant |

**# at 7%**

- 16 Lead Agencies (15 states and D.C.)
    - Connecticut, District of Columbia, Georgia, Kentucky, Montana, Nebraska, Nevada, New Hampshire, Oklahoma, Oregon, Pennsylvania, Rhode Island, Utah, Washington, West Virgina, and Wyoming

**# cap co-pays at a level less than 7% (e.g., 1%)**

- 21 Lead Agencies (16 states, 5 territories)

| Lead Agency | Co-pay Cap less than 7% |
|---|---|
| American Samoa | No SFS (compliant) |
| Arizona | 1.7% |
| Arkansas | 4% |
| California | 1% |
| Guam | 1.7% |
| Iowa | 6.5% |
| Kansas | 3% |
| Louisiana | 5.25% |
| Maryland | 1% |
| Michigan | 5.3% |
| Mississippi | 6.5% |
| New Jersey | 5% |
| New Mexico | 5% |
| North Dakota | 6% |
| Northern Mariana Islands | 1% |
| Puerto Rico | 2% |
| South Carolina | 2% |

| | |
|---|---|
| South Dakota | 2% |
| Tennessee | 5% |
| Virgin Islands | 2% |
| Virginia | 5% |

**Implementation of Grants or Contracts for Direct Services**

**based on FFY 2025-2027 CCDF Plan Responses**

**(as of 3/9/26)**

The CCDF March 2024 final rule imposed a requirement that states and territories provide some grants or contracts for direct services for infants and toddlers, children with disabilities, and children in underserved geographic areas.

*Summary of implementation status:*

- 49 Lead Agencies are non-compliant and do not provide some grants or contracts for direct services for infants and toddlers, children with disabilities, and children in underserved geographic areas.
- 7 Lead Agencies currently provide some grants or contracts for infants and toddlers, children with disabilities, and children in underserved geographic areas.
    - 1 Lead Agencies came into compliance with the requirement since initial FFY 2026-2027 Plan approval through the Plan amendment process.
    - 

NOTE: To be compliant on the requirement Lead Agencies must provide some grants or contracts for direct services for all three required populations. OCC does not issue partial compliance. For summary purposes, below is the implementation status by required population:

- 12 Lead Agencies provide some grants or contracts for infants and toddlers.
- 8 Lead Agencies provide some grants or contracts for children with disabilities.
- 10 Lead Agencies provide some grants or contracts for children in underserved geographic areas.

NOTE: This data is based on the CCDF plan and not OCC monitoring.

**Lead Agency Implementation Details**

| Lead Agency | Grants or contracts for infants and toddlers | Grants or contracts for children with disabilities | Grants or contracts for children in underserved geographic areas | Current FY 25-27 CCDF Plan Compliance Determination |
|---|---|---|---|---|
| Alabama | No | No | No | Non-compliant |
| Alaska | No | No | No | Non-compliant |
| American Samoa | No | No | No | Non-compliant |

| | | | | |
|---|---|---|---|---|
| Arizona | No | No | No | Non-compliant |
| Arkansas | No | No | No | Non-compliant |
| California | Yes | Yes | Yes | Compliant |
| Colorado | No | No | No | Non-compliant |
| Connecticut | No | No | No | Non-compliant |
| Delaware | No | No | No | Non-compliant |
| District of Columbia | No | No | No | Non-compliant |
| Florida | No | No | No | Non-compliant |
| Georgia | No | No | No | Non-compliant |
| Guam | No | No | No | Non-compliant |
| Hawaii | No | No | No | Non-compliant |
| Idaho | No | No | No | Non-compliant |
| Illinois | Yes | Yes | Yes | Compliant |
| Indiana | No | No | No | Non-compliant |
| Iowa | No | No | No | Non-compliant |
| Kansas | Yes | Yes | Yes | Compliant |
| Kentucky | No | No | No | Non-compliant |
| Louisiana | Yes | No | Yes | Non-compliant |
| Maine | No | No | No | Non-compliant |
| Maryland | No | No | No | Non-compliant |
| Massachusetts | Yes | Yes | Yes | Compliant |
| Michigan | No | No | No | Non-compliant |
| Minnesota | Yes | Yes | Yes | Compliant (*came into compliance with Amendment #2 approved on 11/14/25) |
| Mississippi | No | No | No | Non-compliant |
| Missouri | No | No | No | Non-compliant |
| Montana | No | No | No | Non-compliant |
| Nebraska | No | No | No | Non-compliant |
| Nevada | Yes | No | No | Non-compliant |
| New Hampshire | No | No | No | Non-compliant |
| New Jersey | Yes | No | Yes | Non-compliant |
| New Mexico | No | No | No | Non-compliant |
| New York | Yes | Yes | Yes | Compliant |
| North Carolina | No | No | No | Non-compliant |
| North Dakota | No | No | No | Non-compliant |
| Northern Mariana Islands | No | No | No | Non-compliant |

| | | | | |
|---|---|---|---|---|
| Ohio | No | No | No | Non-compliant |
| Oklahoma | No | No | No | Non-compliant |
| Oregon | Yes | Yes | Yes | Compliant |
| Pennsylvania | Yes | No | Yes | Non-compliant |
| Puerto Rico | Yes | Yes | No | Non-compliant |
| Rhode Island | No | No | No | Non-compliant |
| South Carolina | No | No | No | Non-compliant |
| South Dakota | No | No | No | Non-compliant |
| Tennessee | No | No | No | Non-compliant |
| Texas | No | No | No | Non-compliant |
| Utah | No | No | No | Non-compliant |
| Vermont | No | No | No | Non-compliant |
| Virgin Islands | No | No | No | Non-compliant |
| Virginia | No | No | No | Non-compliant |
| Washington | No | No | No | Non-compliant |
| West Virginia | No | No | No | Non-compliant |
| Wisconsin | No | No | No | Non-compliant |
| Wyoming | No | No | No | Non-compliant |

**Implementation of paying based on enrollment based on FFY 2025-2027 CCDF Plan Responses**

**(as of 3/9/26)**

The CCDF March 2024 final rule imposed a requirement that states and territories pay providers based on a child's authorized enrollment.

*Summary of implementation status:*

- 27 Lead Agencies are non-compliant and do not pay providers based on child's authorized enrollment.
- 29 Lead Agencies currently pay providers based on enrollment.
    - 2 Lead Agencies came into compliance with the requirement since initial FFY 2026-2027 Plan approval through the Plan amendment process.

NOTE: This data is based on the CCDF plan and not OCC monitoring.

**Lead Agency Implementation Details**

| Lead Agency | Paying based on enrollment | Current FY 25-27 CCDF Plan Compliance Determination |
|---|---|---|
| Alabama | Yes | Compliant |
| Alaska | No | Non-compliant |
| American Samoa | Yes | Compliant |
| Arizona | No | Non-compliant |
| Arkansas | No | Non-compliant |
| California | Yes | Compliant |
| Colorado | No | Non-compliant |
| Connecticut | Yes | Compliant |
| Delaware | No | Non-compliant |
| District of Columbia | Yes | Compliant |
| Florida | No | Non-compliant |
| Georgia | No | Non-compliant |
| Guam | Yes | Compliant |
| Hawaii | Yes | Compliant |
| Idaho | No | Non-compliant |
| Illinois | No | Non-compliant |
| Indiana | Yes | Compliant |
| Iowa | No | Non-compliant |
| Kansas | Yes | Compliant |
| Kentucky | Yes | Compliant |
| Louisiana | Yes | Compliant |

| | | |
|---|---|---|
| Maine | Yes | Compliant (*came into compliance with Amendment #2 approved on 08/18/25) |
| Maryland | Yes | Compliant |
| Massachusetts | Yes | Compliant |
| Michigan | No | Non-compliant |
| Minnesota | No | Non-compliant |
| Mississippi | Yes | Compliant |
| Missouri | No | Non-compliant |
| Montana | No | Non-compliant |
| Nebraska | No | Non-compliant |
| Nevada | No | Non-compliant |
| New Hampshire | Yes | Compliant |
| New Jersey | Yes | Compliant |
| New Mexico | Yes | Compliant |
| New York | No | Non-compliant |
| North Carolina | No | Non-compliant |
| North Dakota | Yes | Compliant |
| Northern Mariana Islands | Yes | Compliant |
| Ohio | No | Non-compliant |
| Oklahoma | No | Non-compliant |
| Oregon | No | Non-compliant |
| Pennsylvania | No | Non-compliant |
| Puerto Rico | No | Non-compliant |
| Rhode Island | No | Non-compliant |
| South Carolina | Yes | Compliant (*came into compliance with Amendment #1 approved on 11/14/25) |
| South Dakota | Yes | Compliant |
| Tennessee | Yes | Compliant |
| Texas | Yes | Compliant |
| Utah | Yes | Compliant |
| Vermont | No | Non-compliant |
| Virgin Islands | Yes | Compliant |
| Virginia | No | Non-compliant |
| Washington | No | Non-compliant |
| West Virginia | Yes | Compliant |
| Wisconsin | Yes | Compliant |
| Wyoming | Yes | Compliant |

**Implementation of Prospective Payments**

**based on FFY 2025-2027 CCDF Plan Responses**

**(as of 3/9/26)**

The CCDF March 2024 final rule imposed a requirement that states and territories pay providers in advance or at the beginning of the delivery of service (i.e. prospectively) with limited exceptions.

*Summary of implementation status:*

- 47 Lead Agencies are non-compliant and do not pay providers in advance or at the beginning of the delivery of service.
- 9 Lead Agencies currently pay providers prospectively.
    - 2 Lead Agencies came into compliance with the requirement since initial FFY 2026-2027 Plan approval through the Plan amendment process.

NOTE: This data is based on the CCDF plan and not OCC monitoring.

**Lead Agency Implementation Details**

| Lead Agency | Prospective Payments | Current FY 25-27 CCDF Plan Compliance Determination |
|---|---|---|
| Alabama | No | Non-compliant |
| Alaska | No | Non-compliant |
| American Samoa | No | Non-compliant |
| Arizona | No | Non-compliant |
| Arkansas | No | Non-compliant |
| California | No | Non-compliant |
| Colorado | No | Non-compliant |
| Connecticut | No | Non-compliant |
| Delaware | No | Non-compliant |
| District of Columbia | No | Non-compliant |
| Florida | No | Non-compliant |
| Georgia | No | Non-compliant |
| Guam | No | Non-compliant |
| Hawaii | Yes | Compliant |
| Idaho | No | Non-compliant |
| Illinois | No | Non-compliant |
| Indiana | No | Non-compliant |
| Iowa | No | Non-compliant |
| Kansas | Yes | Compliant |
| Kentucky | No | Non-compliant |

| | | |
|---|---|---|
| Louisiana | No | Non-compliant |
| Maine | Yes | Compliant (*came into compliance with Amendment #2 approved on 8/18/25) |
| Maryland | Yes | Compliant |
| Massachusetts | No | Non-compliant |
| Michigan | No | Non-compliant |
| Minnesota | No | Non-compliant |
| Mississippi | No | Non-compliant |
| Missouri | No | Non-compliant |
| Montana | No | Non-compliant |
| Nebraska | No | Non-compliant |
| Nevada | No | Non-compliant |
| New Hampshire | No | Non-compliant |
| New Jersey | No | Non-compliant |
| New Mexico | No | Non-compliant |
| New York | No | Non-compliant |
| North Carolina | No | Non-compliant |
| North Dakota | Yes | Compliant |
| Northern Mariana Islands | Yes | Compliant |
| Ohio | No | Non-compliant |
| Oklahoma | No | Non-compliant |
| Oregon | No | Non-compliant |
| Pennsylvania | No | Non-compliant |
| Puerto Rico | No | Non-compliant |
| Rhode Island | No | Non-compliant |
| South Carolina | Yes | Compliant (*came into compliance with Amendment #1 approved on 11/14/25) |
| South Dakota | No | Non-compliant |
| Tennessee | No | Non-compliant |
| Texas | No | Non-compliant (*but has submitted amendment pending approval/compliance determination) |
| Utah | Yes | Compliant |
| Vermont | No | Non-compliant |
| Virgin Islands | No | Non-compliant |
| Virginia | No | Non-compliant |
| Washington | No | Non-compliant |

| | | |
|---|---|---|
| West Virginia | No | Non-compliant |
| Wisconsin | Yes | Compliant |
| Wyoming | No | Non-compliant |